THE TRAVELERS INDEMNITY COMPANY *v.* EDWARD J.
MALEC, ADMINISTRATOR (ESTATE OF
JOANNE M. MALEC), ET AL.
(13894)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and HULL, Js.

Argued April 10—decision released June 19, 1990

*Geoffrey Naab,* for the appellant (plaintiff).

*Martin P. Gold* and *Richard H. Alden,* with whom
was *J. Brian Gaffney,* for the appellees (named defend-
ant et al.).

COVELLO, J. This is an appeal from a judgment of
the trial court confirming a $1,000,000 underinsured

motorist arbitration award. The sole issue is whether the insured properly elected to accept less uninsured motorist insurance than the statutory amount required by General Statutes § 38-175c (a) (2). We agree with the trial court's conclusion that the purported election was ineffective and affirm the judgment.

The relevant facts are as follows. On May 18, 1982, the plaintiff, The Travelers Indemnity Company (Travelers), had in force a business automobile liability policy insuring American Red Cross. Attached to the policy was a document dated May 18, 1982, executed in behalf of American Red Cross, entitled "Rejection of or Election of Minimum Limits Uninsured and Underinsured Motorists Insurance." The document stated that "the undersigned insured rejects uninsured motorist coverage and underinsured motorists insurance in all states where such rejection is permitted by law. In those states where such rejection is not permitted, the undersigned elects uninsured motorists insurance limits which are the lesser of the mandatory limits or the financial responsibility limits." At the time, § 38-175c required uninsured motorist coverage in the amount of $20,000 for bodily injury or for death.[1]

On July 5, 1983, over one year later, the General Assembly enacted Public Acts 1983, No. 83-461, amending § 38-175c (a) (2). It required that every automobile liability policy "issued or renewed on and after July 1, 1984," was to have uninsured motorist coverage equal to the liability coverage of the policy "unless

[1] General Statutes (Rev. to 1981) § 38-175c (a) (1) provided: "Every such [automobile liability] policy shall provide insurance, herein called uninsured motorist coverage . . . with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112 . . . ." General Statutes (Rev. to 1981) § 14-112 (a) provided: "[T]he commissioner shall require . . . proof of financial responsibility to satisfy any claim for damages by reason of personal injury to, or the death of, any one person, twenty thousand dollars . . . ."

the insured requests in writing a lesser amount . . . ."[2] The American Red Cross never requested any lesser amount as the parties responsible for such a decision at American Red Cross were never aware that such a statutory requirement then existed.

On July 1, 1984, Travelers reissued its business automobile policy to American Red Cross. The policy provided $1,000,000 of liability coverage and $40,000 of uninsured/underinsured motorist coverage. Thus, unless the American Red Cross election of May 18, 1982, constituted a request for a lesser amount of coverage within the meaning of the later amended § 38-175c (a) (2), the uninsured motorist coverage, by operation of law, would be $1,000,000, the amount equal to the liability coverage.

On February 7, 1985, Joanne Malec, Ruth Glahn and Katherine Mazzaferro, were involved in a two car collision in Southington. The driver of the other car caused the accident. Malec and Glahn died in the crash and Mazzaferro was seriously injured. The insurance carrier for the other vehicle paid each of the claimants $100,000.

Unable to agree on whether the Travelers policy provided $1,000,000 or $40,000 of underinsured motorist coverage, the parties submitted the issue to arbitration.[3] The arbitration panel found that the May 18, 1982

---

[2] General Statutes (Rev. to 1983) § 38-175c (a) (2), as amended by Public Acts 1983, No. 83-461, provided: "Notwithstanding any provision of this section to the contrary, every such policy issued or renewed on and after July 1, 1984, shall provide uninsured motorist coverage with limits for bodily injury and death equal to those purchased to protect against loss resulting from the liability imposed by law unless the insured requests in writing a lesser amount, but not less than the limits specified in subsection (a) of section 14-112. Such written request shall apply to all subsequent renewals of coverage and to all policies or endorsements which extend, change, supersede or replace an existing policy issued to the named insured, unless changed in writing by the insured."

[3] The Travelers policy provided: "If we and an insured disagree whether the insured is legally entitled to recover damages from the owner or driver

election of minimum coverage by American Red Cross failed to satisfy the request for a lesser amount of coverage required by § 38-175c (a) (2) and therefore, the underinsured motorist coverage was $1,000,000, i.e., the amount of the liability coverage.

Travelers filed an application in Superior Court to set aside the arbitration ruling.[4] The trial court, *Hammer, J.,* concluding, inter alia, that "neither Travelers nor the Red Cross took any steps to comply with the express requirements of the statute (i.e. § 38-175c (a) (2)) with specific reference to the policy issued on July 1, 1984," confirmed the award. Travelers appealed to the Appellate Court. We thereafter transferred the matter to ourselves pursuant to Practice Book § 4023.

On appeal, Travelers claims that its insured's written election of May 18, 1982, constituted a continuing directive to Travelers to provide the minimum uninsured/underinsured motorist coverage (UM coverage) permitted by law, and thus, the May 18, 1982 election served as an anticipatory request for a lesser amount of coverage as required by the subsequently amended statute. We do not agree.

Prior to the enactment of § 38-175c; see Public Acts 1967, No. 510; UM coverage, although available, was not required. Coverage was limited to the amount requested by the insured. In 1969, § 38-175c was amended to require parity of UM coverage with the *minimum limits* of liability coverage required by Gen-

of an uninsured motor vehicle, or do not agree as to the amount of damages, the insured may make a written demand for arbitration."

[4] General Statutes § 52-418 provides: "(a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides . . . shall make an order vacating the award if it finds any of the following defects . . . (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

eral Statutes § 14-112 (a). See Public Acts 1969, No. 202. In 1983, § 38-175c was again amended now to require parity of UM coverage with the *amount of liability coverage purchased by the insured* unless the insured specifically requested a lesser amount. See Public Acts 1983, No. 83-461. Thus, examination of the recent history of § 38-175c discloses: (1) a heightened legislative interest in uninsured motorist protection; (2) a mandate to raise the amount of this protection; and (3) an intention to increase the public's consciousness as to the availability of this kind of insurance by requiring increased coverage unless the insured specifically requested otherwise. "A statute is to be construed by considering its legislative history, language, purpose and the circumstances surrounding its enactment." *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 395, 446 A.2d 1059 (1982).

We have no doubt that the General Assembly contemplated that an insured should make a purposeful and knowing decision to request a lesser amount of UM coverage. The legislative history of Public Acts 1983, No. 83-461 demonstrates the importance that the legislature attached to specific awareness of the content of the statute: "Under sub-section 2, it would require each insured who purchases more than the legally required amount of liability insurance would [sic] receive the same amount of uninsured motorist coverage. The insured would have an opportunity to waive in writing the additional uninsured motorist coverage. *This change would increase the consumer's awareness* of the value of low-cost uninsured motorist coverage which protects the insured and his family members. Apparently many drivers purchase $100,000.00 or more of liability coverage but leave their uninsured motorist coverage at the minimum of $20,000.00–$40,000.00. Sub-section 2 which *gives such a driver an increased amount of uninsured motorist coverage, unless he makes*

*a conscious decision not to purchase it."* (Emphasis added.) 26 S. Proc., Pt. 9, 1983 Sess., p. 3055, remarks of Senator Wayne A. Baker.

Section 38-175c (a) (2) mandates "uninsured motorist coverage with limits . . . equal to those purchased [by the insured] to protect against loss resulting from the liability imposed by law unless the insured *requests* in writing a lesser amount . . . ." (Emphasis added.) The verb speaks in the present tense. The statute does not say *"requested"* nor does it say *"may have requested in the past."* We are entitled to presume that if the legislature intended that past acts could constitute compliance with the mandate of requests for a lesser amount pursuant to the statute, language to that effect would appear in the statute. "[W]hen the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent. *State* v. *White,* 204 Conn. 410, 421, 528 A.2d 811 (1987); *Beloff* v. *Progressive Casualty Ins. Co.,* 203 Conn. 45, 54–55, 523 A.2d 477 (1987)." *American Universal Ins. Co.* v. *DelGreco,* 205 Conn. 178, 193, 530 A.2d 171 (1987).

Section 38-175c (a) (2) further provides: "Such written request shall apply to all *subsequent* renewals of coverage and to all policies or endorsements which extend, change, supersede or replace an existing policy issued to the named insured, unless changed in writing by the insured." (Emphasis added.) The adjective refers to succeeding or following renewals. There is no reference to requests for lesser amounts that may have accompanied prior renewals of coverage.

Finally, we observe that although the amendment was enacted on July 5, 1983, its effective date was stayed almost one full year to July 1, 1984. In so doing, the legislature presumably intended to allow insurance

carriers to notify their insureds of the act's new consequences and to furnish time *thereafter* for them to request the lesser amount of coverage.

Adoption of Travelers' argument would require us to overlook the fact that the American Red Cross election of minimum limits executed in May, 1982, seeks to comply with the terms of a statute that did not exist until July, 1983, and was not effective until July 1, 1984. Further, the claim that this constituted a conscious request for a lesser amount pursuant to the statute is irreconcilable with the fact that neither Travelers nor American Red Cross in negotiating the insurance contract was even aware that the 1983 amendment to the statute existed.

In sum, we conclude that in its enactment of § 38-175c (a) (2), the legislature intended that there be absolute parity between liability coverage limits and UM coverage limits as of July 1, 1984, and that any reductions in UM coverage would require a request for a lesser amount to be made after that date.

The judgment is affirmed.

In this opinion PETERS, C. J., and HULL, J., concurred.

SHEA, J., with whom CALLAHAN, J., joins, dissenting. I disagree with the conclusion reached by the majority that the document attached to the business automobile liability policy issued by the plaintiff to insure American Red Cross fails to satisfy the exception to the mandate of General Statutes § 38-175c (a) (2) for uninsured motorist coverage limits equal to liability coverage limits, "unless the insured requests in writing a lesser amount." This rejection form, signed by an officer of the insured, unambiguously states that the insured "elects uninsured motorists insurance limits which are the lesser of the mandatory limits or the

financial responsibility limits." Under § 38-175c (a) (1) that directive would afford uninsured motorists coverage of $20,000 per person, while the liability coverage limit is $1,000,000.

The majority relies upon the fact that § 38-175c (a) (2) uses the present tense, "requests," rather than "requested" and specifically makes "such written request" applicable to "subsequent renewals of coverage." It also maintains that because the request in this case preceded the enactment of the provision involved, it cannot be deemed to satisfy the statutory requirement for a written request. This analysis ignores the fact that the request of American Red Cross for the minimum uninsured motorist coverage permitted by law was a continuing directive that remained in force from May 18, 1982, when it was executed, until long after the date of the accident, February 7, 1985. The undisputed testimony indicated that American Red Cross sought to minimize its insurance costs by instructing its insurer to provide only the minimum coverage required in each state where it conducted its operations, that this was a deliberate decision fully agreed upon between the insurer and the insured, and that policies reflecting this understanding had been issued each year accordingly. Under the terms of these policies, American Red Cross is a self-insurer for the first $250,000 of any claim filed during the policy year. Its purpose in executing the request form obviously was to obtain the least costly coverage permitted by law and it instructed its insurer to achieve that result with respect to each of the fifty states in which it operated, regardless of the changes that might be made in the laws of a particular state during the policy period. It is a strained construction of the statutory language to hold that such a plainly continuing directive does not satisfy the requirement of § 38-175c (a) (2) for a written request for uninsured motorist coverage less than the liability limit of the policy.

In *Abbott* v. *California State Auto Assn.*, 68 Cal. App. 3d 763, 772, 137 Cal. Rptr. 580 (1977), a letter from an employer to its insurer requesting "that 'uninsured motorists coverage not be carried except in states where such coverage is mandatory' " was held to be effective in California, where such coverage was not mandatory, and to comply with a statutory requirement that " '[t]he insurer and any named insured, prior to or subsequent to the issuance or renewal of a policy, may, by agreement in writing, delete the provision covering damage caused by an uninsured motor vehicle . . . .' " Id., 772 n.6. In *Robinson* v. *State Farm Mutual Auto Ins. Co.*, 23 Cal. App. 3d 953, 100 Cal. Rptr. 565 (1972), a waiver executed in connection with the original issuance of a policy was held to apply to subsequent renewals even before the California statute contained such a provision expressly. In *Hellerstedt* v. *Old Republic Ins. Co.*, 429 N.W.2d 677, 679 (Minn. App. 1988), the requirement of a Minnesota statute that uninsured motorist coverage be offered to an insured was held to be satisfied when the insured had requested a prior insurer in issuing a fleet policy to provide "only the insurance required by law on a per state basis," declining all optional coverage, and directed its present insurer to issue a similar policy. In *Goode* v. *Daugherty*, 694 S.W.2d 314 (Tenn. App. 1985), the exception in a statute similar to § 38-175c (a) (2) allowing an insured to select in writing lower uninsured motorist limits than those otherwise mandated was deemed met by the execution of forms selecting such lower limits about two years before the statute became effective. I would follow these precedents, which give effect to the clear understanding between the insured and its insurer as reflected in the written documents evidencing their intentions, rather than construe § 38-175c (a) (2) in such a manner as to frustrate those unambiguously expressed intentions, as the majority has done.

Accordingly, I dissent.