HERMAN PLATCOW, ADMINISTRATOR (ESTATE OF LAUREL PLATCOW) ET AL. *v.* YASUDA FIRE AND MARINE INSURANCE COMPANY OF AMERICA ET AL.
(AC 20027)

Lavery, C. J., and Mihalakos and Peters, Js.

48

Argued May 8—officially released July 25, 2000

*Phillip A. Escoriaza*, with whom was *Howard A. Jacobs*, for the appellants (plaintiffs).

*Jon Berk*, for the appellees (defendants).

*Opinion*

PETERS, J. The principal issue in this case is whether, under the terms of a long-term automobile lease and the requirements of our insurance statutes and regula-

tions, a lessor must provide uninsured[1] motorist coverage to protect the lessee in the event of the lessee's injury by an uninsured motorist. The appeal comes to us on a stipulation of facts attached to a reservation of questions by the trial court. We conclude that the lessor had no such obligation.

The plaintiffs, Herman Platcow and June Hansted, are coadministrators of the estate of Laurel Platcow (Platcow). They filed a complaint against the defendants, Nissan Motor Acceptance Corporation (Nissan) and Yasuda Fire & Marine Insurance Company of America (Yasuda). Nissan was the lessor of a private passenger automobile to Platcow under a long-term lease. Yasuda provided liability insurance for the automobile to Nissan. The plaintiffs allege that the defendants were obligated to provide uninsured motorist coverage for Platcow's benefit. The defendants deny their liability.

The parties requested the court to reserve three questions for appellate review. The stipulated questions are: "(1) Under the circumstances of this case, is Yasuda Fire & Marine Insurance Company of America obligated to extend to the Estate of Laurel Platcow any uninsured/ underinsured motorist benefits? (2) If Yasuda Fire & Marine Insurance Company of America is obligated to extend uninsured motorist protection to the Estate of Laurel Platcow, is the obligation to pay inapplicable due to the statutory mandate of [General Statutes] § 38a-336 (d)? (3) If Yasuda Fire & Marine Insurance Company of America is obligated to extend uninsured motorist protection to the Estate of Laurel Platcow, is the obligation greater than $100,000?"[2] The court granted the parties' request.

---

[1] In this opinion, we use the term "uninsured" to include both uninsured and underinsured motorist coverage.

[2] None of the reserved questions addresses the potential liability of Nissan. Nissan nonetheless has standing to pursue this appeal because answers to the reserved questions require a determination of whether Nissan owed Platcow the duty to obtain a different insurance policy from Yasuda.

The stipulation of facts establishes the following. On February 8, 1997, Platcow leased an automobile from Nissan. The lease gave her the option to purchase the automobile at the end of the lease period of three years.

The lease required Platcow to purchase liability coverage for the leased automobile.[3] She was obligated, inter alia, to obtain coverage for bodily injury liability of $100,000 per person and $300,000 per occurrence. For the protection of Nissan, the insurance policy to be purchased by Platcow was required to list Nissan as an additional insured.

The lease said nothing about uninsured motorist coverage. The lease did not inform Platcow about her options to purchase additional insurance, either to increase the amount of her liability coverage or to obtain uninsured motorist coverage.[4]

Platcow purchased an insurance policy from Travelers Property & Casualty Insurance Company (Travelers) that provided the coverage required by the lease.

[3] Paragraph thirteen of the lease agreement provides in relevant part: "Insurance: I realize I am responsible for the following types and amounts of coverage during the lease term:

"(a) Comprehensive, including fire and theft insurance if the Vehicle is a car . . . with a maximum deductible of $1500;

"(b) Collision insurance with a maximum deductible of $1500;

"(c) Property damage liability of $50,000 per occurrence; and

"(d) Bodily injury liability of $100,000 per person and $300,000 per occurrence.

"I understand that the insurance policy must name you as loss payee on coverages (a) and (b) and provide you primary coverage as an additional insured on coverages (c) and (d). At your request, I will provide you with proof that the coverages are in effect. . . ."

[4] The plaintiffs refer in their brief to Nissan's alleged failure to inform Platcow about a range of options that she might have wanted to consider. Because the stipulated facts do not address the manner in which the lease agreement was negotiated, we do not know what conversations Nissan might have had with Platcow at that time. With respect to alleged defects in the leasing arrangement, we are, therefore, limited to a consideration of what is stated, or not stated, in the lease agreement itself.

The policy also provided uninsured motorist coverage for Platcow in the amount of $100,000.

In addition to requiring Platcow to obtain insurance to indemnify Nissan in the event of loss, Nissan purchased an insurance policy from Yasuda that provided $1 million in excess liability coverage[5] for leased automobiles, including the Platcow automobile.[6] The named insured under the Yasuda policy was Nissan. Neither Platcow as an individual nor lessees as a class were so designated.

In addition to this coverage for the protection of Nissan, the Yasuda policy also provided limited coverage for lessees such as Platcow. The relevant paragraph states in pertinent part, "For the lessee . . . operating the 'leased auto' with the permission of [Nissan], the Limit of Insurance provided by this endorsement is the minimum limit required by any applicable compulsory or financial responsibility law."[7]

On August 8, 1998, while both the Travelers policy and the Yasuda policy were in full effect, Platcow was killed in an accident resulting from the negligence of an uninsured motorist. Travelers paid the plaintiffs

---

[5] Paragraph four of a provision in the Yasuda policy entitled "Liability Coverage" states: "The insurance provided by this endorsement is excess over any other collectible insurance, whether primary, excess or contingent, unless such insurance is specifically written to apply in excess of this policy."

[6] Under General Statutes § 14-154a, Nissan was at risk of tort liability to third parties for injuries caused by the operation of the automobile leased to Platcow. "For more than 100 years, § 14-154a and its statutory antecedents have imposed on owners of leased vehicles obligations that significantly supplement common-law principles of vicarious liability. We have construed the statute as having created a 'statutory suretyship,' pursuant to which the owner of a leased automobile, driven by an authorized driver, is directly liable for injuries caused by the operation of the vehicle. See *Gionfriddo* v. *Avis Rent A Car System, Inc.*, 192 Conn. 280, 284, 287–88, 472 A.2d 306 (1984); *Levick* v. *Norton*, 51 Conn. 461, 469 (1884)." *Smith* v. *Mitsubishi Motors Credit of America, Inc.*, 247 Conn. 342, 346, 721 A.2d 1187 (1998).

[7] Under General Statutes § 14-112, the minimum amount of insurance coverage is $20,000 per person and $40,000 per occurrence.

$100,000 in accordance with the terms of the policy Platcow had obtained.[8]

The plaintiffs claim that they may pursue a claim under the Yasuda policy for the remaining unpaid damages. They advance three arguments in support of their claim.[9] In their view: (1) Nissan was required to obtain uninsured motorist coverage for Platcow within the Yasuda policy because Nissan, as the owner of the leased automobile, fell within the statutory mandate of General Statutes § 38a-336 (a) (2), under which an automobile insurer must provide uninsured motorist coverage in the same amount as the liability coverage; (2) ambiguities in the Nissan lease and the Yasuda policy must be construed against the defendants so as to require uninsured motorist coverage for Platcow; and (3) the term in the lease that required Platcow to purchase liability insurance in the amount of $100,000 precluded Platcow from exercising a meaningful choice to obtain uninsured motorist coverage in a greater amount. We are not persuaded by the plaintiffs' arguments.

I

APPLICABILITY OF § 38a-336 (a)

Section 38a-336 is one of a series of statutes governing motor vehicle insurance in this state. Under General Statutes § 38a-371 (a) (1), the owner of a private passenger motor vehicle that is required to be registered in this state must "provide and continuously maintain throughout the registration period security in accordance with [General Statutes §§] 38a-334 to 38a-343, inclusive."[10] See also General Statutes § 14-12b (a) (1).

---

[8] Travelers is not a party to the present litigation.

[9] We address these claims in an order that differs from the presentation in the plaintiffs' brief.

[10] General Statutes § 38a-371 provides in relevant part: "Mandatory security requirements. (a) (1) The owner of a private passenger motor vehicle required to be registered in this state shall provide and continuously maintain throughout the registration period security in accordance with sections 38a-

The minimum amount of motor vehicle insurance coverage that will satisfy this statutory requirement is liability coverage of $20,000 per person for bodily injury or death and $40,000 per accident. See General Statutes § 38a-335 (a); General Statutes § 14-112 (a); Regs., Conn. State Agencies § 38a-334-5 (e).[11]

Section 38a-336 (a) (2) builds on this foundation by requiring any motor vehicle liability insurance policy to include "uninsured and underinsured motorist coverage

334 to 38a-343, inclusive. . . .

"(b) The security required by this section, may be provided by a policy of insurance complying with this section issued by or on behalf of an insurer licensed to transact business in this state . . .

\* \* \*

"(d) The owner of any private passenger motor vehicle required to be registered in this state who operates it or permits it to be operated in this state is guilty of a class C misdemeanor if he fails to provide the security required by this section.

"(e) An owner of a private passenger motor vehicle with respect to which security is required who fails to have such security in effect at the time of an accident shall have all of the rights and obligations of an insurer under sections 38a-363 to 38a-388, inclusive, and shall remain subject to all the obligations of the Financial Responsibility Law, sections 14-112 to 14-133, inclusive. . . ."

[11] General Statutes § 38a-335 (a) provides: "Each automobile liability insurance policy shall provide insurance in accordance with the regulations adopted pursuant to section 38a-334 against loss resulting from the liability imposed by law, with limits not less than those specified in subsection (a) of section 14-112, for damages because of bodily injury or death of any person and injury to or destruction of property arising out of the ownership, maintenance or use of a specific motor vehicle or motor vehicles within any state, territory, or possession of the United States of America or Canada."

Section 38a-334-5 (e) of the Regulations of Connecticut State Agencies provides in relevant part: "Limits of liability. The limit of the insurer's liability shall not be less than the applicable limits for bodily injury and property damage liability specified in subsection (a) of section 14-112 of the general statutes. . . ."

General Statutes § 14-112 (a) requires "proof of financial responsibility to satisfy any claim for damages by reason of personal injury to, or the death of, any one person, of twenty thousand dollars, or by reason of personal injury to, or the death of, more than one person on account of any accident, of at least forty thousand dollars, and for damage to property of at least ten thousand dollars . . . ."

with limits for bodily injury and death equal to those purchased to protect against loss resulting from the liability imposed by law unless any named insured requests in writing a lesser amount . . . ."[12] The plaintiffs argue that § 38a-336 (a) (2) required the Yasuda policy to include uninsured motorist coverage for Platcow in the amount of $1 million.

As the defendants aptly observe, the difficulty with the plaintiffs' reliance on § 38a-336 (a) (2) is that the plaintiffs fail to take into account the provisions of General Statutes § 38a-363 (d). That section defines the person who is the owner of a motor vehicle for purposes of the statutory provisions governing no-fault motor vehicle insurance. It provides that for multiyear automobile leases that include an option for purchase by the lessee, the "owner" of the automobile is its lessee.[13]

---

[12] General Statutes § 38a-336 (a) (2) provides in relevant part: "Notwithstanding any provision of this section to the contrary, each automobile liability insurance policy issued or renewed on and after January 1, 1994, shall provide uninsured and underinsured motorist coverage with limits for bodily injury and death equal to those purchased to protect against loss resulting from the liability imposed by law unless any named insured requests in writing a lesser amount, but not less than the limits specified in subsection (a) of section 14-112. . . . No such written request for a lesser amount shall be effective unless any named insured has signed an informed consent form which shall contain: (A) An explanation of uninsured and underinsured motorist insurance approved by the commissioner; (B) a list of uninsured and underinsured motorist coverage options available from the insurer; and (C) the premium cost for each of the coverage options available from the insurer. Such informed consent form shall contain a heading in twelve-point type and shall state: 'WHEN YOU SIGN THIS FORM, YOU ARE CHOOSING A REDUCED PREMIUM, BUT YOU ARE ALSO CHOOSING NOT TO PURCHASE CERTAIN VALUABLE COVERAGE WHICH PROTECTS YOU AND YOUR FAMILY. IF YOU ARE UNCERTAIN ABOUT HOW THIS DECISION WILL AFFECT YOU, YOU SHOULD GET ADVICE FROM YOUR INSURANCE AGENT OR ANOTHER QUALIFIED ADVISER.' "

[13] General Statutes § 38a-363 provides in relevant part: "As used in sections 38a-19 and 38a-363 to 38a-388, inclusive . . . (d) 'Owner' of a private passenger motor vehicle means the person who owns the legal title thereto, except where the motor vehicle is the subject of a security agreement or lease with option to purchase with the debtor or lessee having the right to possession, in which event 'owner' means the debtor or lessee. . . ."

Pursuant to § 38a-371 (a) (1), the *owner* of a private passenger motor vehicle must provide and maintain security, by a policy of insurance, on the vehicle. See *Middlesex Ins. Co.* v. *Quinn*, 225 Conn. 257, 269, 622 A.2d 572 (1993). In this case, therefore, the defendants maintain that the statutory obligation to insure fell on Platcow and not on Nissan or its insurer, Yasuda.

The plaintiffs respond to this statutory difficulty by pointing to the fact that no statute expressly "exempts" automobile lessors from providing uninsured motorist coverage. No such exemption is required when the applicable insurance statutes, read together, impose such a duty only on an "owner" of an automobile. Section 38a-363 describes its definitional provisions as applicable to General Statutes §§ 38a-363 to 38a-388. Section 38a-371 (a) (1), in turn, links the definition of "owner" to § 38a-336 by requiring that "[t]he owner of a private passenger motor vehicle . . . shall provide . . . security in accordance with sections 38a-334 to 38a-343, inclusive."[14] The logical inference from this panoply of interrelated statutory provisions is that, for long-term leases,[15] a lessor has no statutory obligation

[14] For the text of General Statutes § 38a-371, see footnote 10.

[15] For the contrary proposition, the plaintiffs cite two Connecticut trial court cases in which those courts concluded that car rental agencies must provide uninsured motorist coverage. *George* v. *Allstate Ins. Co.*, Superior Court, judicial district of New Haven, Docket No. 368984 (July 17, 1998) (22 Conn. L. Rptr. 450); *Aversano* v. *Agency Rent-A-Car*, Superior Court, judicial district of Danbury, Docket No. 367302 (October 31, 1997) (20 Conn. L. Rptr. 553). If these cases involve short-term rentals, they are distinguishable; if they involve long-term leases, they are unpersuasive because they fail to take into account the provisions of General Statutes § 38a-371 that are applicable to long-term leases.

The plaintiffs also argue that we should follow the reasoning in *Moon* v. *Guarantee Ins. Co.*, 764 P.2d 1331, 1334-35 (Okla. 1988), in which the insurer of a car rental company was held to have a duty to provide uninsured motorist coverage for the benefit of a lessee. Again, the opinion does not disclose whether the agreement between the rental company and the lessee was short-term or long-term. More important, Oklahoma apparently has no statutory definition that distinguishes between short-term rentals and long-term leases.

to purchase any insurance for the protection of a lessee. "[W]e are guided by the principle that the legislature is always presumed to have created a harmonious and consistent body of law . . . . Indeed, this tenet of statutory construction requiring us to read statutes together is particularly applicable when the statutes relate to the same subject matter." (Internal quotation marks omitted.) *Commission on Human Rights & Opportunities* v. *Truelove & Maclean, Inc.*, 238 Conn. 337, 347, 680 A.2d 1261 (1996), quoting *Paige* v. *Town Plan & Zoning Commission*, 235 Conn. 448, 455, 668 A.2d 340 (1995); *Derwin* v. *State Employees Retirement Commission*, 234 Conn. 411, 420, 661 A.2d 1025 (1995); *Daly* v. *DelPonte*, 225 Conn. 499, 510, 624 A.2d 876 (1993).

It does not assist the plaintiffs' argument to note that our Supreme Court has held that General Statutes (Rev. to 1989) § 38-175c, the predecessor to § 38a-336, is unambiguous. *Travelers Indemnity Co.* v. *Malec*, 215 Conn. 399, 403–404, 576 A.2d 485 (1990). Unambiguously, the statute required Travelers to provide Platcow uninsured motorist coverage in the same amount as her liability coverage. Unambiguously, the statute did not require Yasuda to provide her such coverage because Yasuda was insuring Nissan as lessor and had no obligation to insure Platcow as owner.[16]

We conclude that the insurance statutes applicable to this case impose no duty on Nissan to obtain an insurance policy, or for Yasuda to draft an insurance policy, that provides long-term lessees such as Platcow with insurance coverage for injuries caused by unin-

---

[16] Connecticut insurance regulations permit an insurer of a lessor to exclude entirely any liability coverage for customers of the lessor. Regs., Conn. State Agencies § 38a-334-5 (c) (11) (B) (ii). It is undisputed that, in this state, mandatory uninsured motorist coverage operates in parity with liability insurance coverage. The plaintiffs have cited no statute that imposes a duty on an insurer to provide uninsured motorist coverage under circumstances in which the insurer need not afford liability coverage.

sured motorists. Further, we can discern no statutory basis for requiring Nissan or Yasuda to inform long-term lessees such as Platcow of the variety of insurance options that they might exercise.[17] Nissan was not Platcow's insurer, either in fact or in law. Yasuda was under no statutory obligation to act as Platcow's insurer. Accordingly, we conclude that § 38a-336 (a) (2) does not provide the plaintiffs the relief that they seek.

## II

## OBLIGATIONS UNDER THE NISSAN LEASE AND THE YASUDA POLICY

The plaintiffs' second claim is that Platcow was entitled to uninsured motorist coverage because ambiguities in the Nissan lease and the Yasuda policy must be resolved in her favor to provide such coverage. We discern no such ambiguity.

The plaintiffs base their argument on an alleged inconsistency in the defendants' view of their obligations. The defendants maintain that, although they had no statutory obligation to provide uninsured motorist coverage for Platcow, they voluntarily, in a consensual agreement, decided to afford Platcow limited insurance coverage, which they denominate as "step down" or "cut back" coverage.

The plaintiffs argue that the defendants' position is internally inconsistent because, on the one hand, the defendants state that they could have chosen not to provide any uninsured motorist coverage and yet, on

---

[17] Our conclusion does not conflict with the holdings of Connecticut cases that condition the enforceability of reduction in uninsured motorist coverage on the informed consent of the insured. See, e.g., *Colonial Penn Ins. Co.* v. *Bryant*, 245 Conn. 710, 721–22, 714 A.2d 1209 (1998); *Nationwide Mutual Ins. Co.* v. *Pasion*, 219 Conn. 764, 770–71, 594 A.2d 468 (1991). These cases involve the purchase of uninsured motorist coverage by an insured from his or her insurer. Platcow bought insurance, and received uninsured motorist coverage, from Travelers and not from Yasuda.

the other hand, the Yasuda policy provides some such coverage. We fail to see the inconsistency. Statutes that make motorist insurance mandatory in some circumstances do not preclude contractual agreements that voluntarily provide coverage for a distinct class of beneficiaries for whom the statutes provide no relief. See *Cook v. Collins Chevrolet, Inc.*, 199 Conn. 245, 253, 506 A.2d 1035 (1986).

As the defendants document, a number of state courts have validated provisions in insurance policies that afford limited insurance coverage for cases in the absence of statutory mandates for full coverage. See, e.g., *Aubrey v. Harleysville Ins. Co.*, 140 N.J. 397, 405–406, 658 A.2d 1246 (1995); *Liberty Mutual Ins. Co. v. Aetna Casualty Ins. Co.*, 168 App. Div. 2d 121, 131–33, 571 N.Y.S.2d 735 (1991); *Universal Underwriters v. Metropolitan Property & Life Ins. Co.* 298 S.C. 404, 409, 380 S.E.2d 858 (1989). We agree with the reasoning of these decisions.

Under the circumstances of this case, the cut back provision affords no remedy to the plaintiffs. The policy expressly provided coverage to lessees only for "the minimum limit required by any applicable compulsory or financial responsibility law." The most uninsured motorist coverage that Platcow could have received under this policy provision was $20,000. Even that recovery is unavailable to the plaintiffs because they have recovered $100,000 under the Travelers policy.[18] See General Statutes § 38a-336 (d).[19]

We conclude, therefore, that neither the Nissan lease nor the Yasuda policy furnishes contractual support for the plaintiffs' claimed entitlement to $1 million in uninsured motorist coverage. It follows from our con-

---

[18] The plaintiffs' brief does not contest the proposition that literal application of the terms of the Yasuda policy affords them no relief.

[19] See also footnote 12.

clusion in part I of this opinion that neither Nissan nor Yasuda had any statutory obligation to provide any uninsured motorist coverage to Platcow, and that they had no such contractual obligation to Platcow unless, voluntarily, they chose to undertake it. Accordingly, they had no contractual obligation to disclose to Platcow that she could not look to them for insurance coverage that the written documents did not include expressly. The relevant documents were not ambiguous on their face and did not become ambiguous by virtue of the inclusion of the cut back provision in the Yasuda policy.

## III

## UNCONSCIONABILITY

The plaintiffs' final claim is that the provision in the Nissan lease that required Platcow to purchase bodily injury liability coverage in the amount of $100,000 per person and $300,000 per occurrence had the effect of precluding her from purchasing insurance in a greater amount. Indisputably, broader liability insurance would have provided broader uninsured motorist coverage for Platcow. The plaintiffs argue that Nissan had a duty to dispel any erroneous inferences about the right to purchase such additional insurance that Platcow might have drawn from the lease provision as written. According to the plaintiffs, it was unconscionable for Nissan not to clarify Platcow's options. They contend, therefore, that the lease and the Yasuda policy are unenforceable to the extent that they fail to provide $100,000 in uninsured motorist coverage to Platcow. The plaintiffs' claim cannot be sustained on the present record.

The plaintiffs articulate their claim as follows. Once Platcow read the insurance clause in the lease, she would not have understood that (1) she was free to buy more or different liability coverage or uninsured motorist coverage, (2) Nissan had no statutory obliga-

tion to provide additional insurance for her benefit if the stipulated coverage of $100,000 and $300,000 proved to be inadequate and (3) Nissan had no statutory obligation to protect her from injury at the hands of a third person or to provide uninsured motorist coverage for such an occurrence.

Because the stipulated facts do not purport to address whether Platcow was, in fact, misled in any way,[20] the plaintiffs' claim devolves into the proposition that, as a matter of law, any lease that is a form contract is unconscionable and unenforceable if its terms fail to provide guidance to a lessee about insurance options that are not precluded by the lease.[21] Although the ultimate determination of whether a contract is unconscionable is a question of law; *Cheshire Mortgage Service, Inc.* v. *Montes*, 223 Conn. 80, 87, 612 A.2d 1130 (1992); courts do not decide such issues of law in a factual vacuum. Cf. General Statutes § 42a-2-302 (b).

The plaintiffs have cited no authority for the broad proposition that they advocate. Indeed, recent Connecticut case law points in the other direction. In *Smith* v. *Mitsubishi Motors Credit of America, Inc.*, 247 Conn. 342, 351, 721 A.2d 1187 (1998), our Supreme Court held that a lessor's use of a form contract did not, per se, impose on the lessor "a sua sponte duty to direct the attention of any potential individual lessee to important clauses contained in the automobile lease." In the absence of an unconditional duty to explain the terms that are stated in a long-term lease, we are unprepared to impose on a lessor an unconditional duty to explain

[20] Notably, the plaintiffs' complaint does not allege that Platcow was misled by the terms of the Nissan lease. It contains no claim of unconscionability and does not claim that either of the defendants had any duty of disclosure to Platcow.

[21] The plaintiffs' complaint does not allege that Platcow was a consumer lessee or that she had leased the car for private rather than professional purposes.

what such a lease does not contain. We conclude, therefore, that there is no support for the plaintiffs' claim of unconscionability.

## IV

## CONCLUSION

We must answer the reserved questions in light of the conclusions that we have reached with respect to each of the plaintiffs' alleged claims for relief.

The first reserved question is: "Under the circumstances of this case, is Yasuda Fire & Marine Insurance Company of America obligated to extend to the Estate of Laurel Platcow any uninsured/underinsured motorist benefits?" We answer this question "No."

We decline to answer either the second or the third reserved question. Each of these questions assumes, contrary to our answer to question one, that Yasuda was obligated to extend uninsured motorist protection to the estate of Laurel Platcow. Even though an issue is raised by a reserved question rather than by an appeal after judgment, discretionary prudential concerns counsel against answering a question that lacks both a factual and a legal predicate. Cf. *Motor Vehicle Manufacturers Assn. of the United States, Inc.* v. *O'Neill*, 203 Conn. 63, 75–76, 523 A.2d 486 (1987); *State* v. *Zach*, 198 Conn. 168, 178, 502 A.2d 896 (1985); *State* v. *Sanabria*, 192 Conn. 671, 684–85, 474 A.2d 760 (1984).

No costs will be taxed to either party.

In this opinion the other judges concurred.