[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] RULING ON DEFENDANT TWIN CITY'S MOTION FOR SUMMARY JUDGMENT AND CROSS CLAIMANT MIDDLESEX MUTUAL'S MOTION FOR SUMMARY JUDGMENT
 FACTS
On September 8, 1998, the plaintiff, Richard Dunn, a Waterbury police officer, filed a two count amended complaint against the defendants, Middlesex Mutual Assurance Company (Middlesex Mutual) and Twin City Fire Insurance Company (Twin City). The amended complaint alleges that on June 5, 1996, the plaintiff incurred multiple injuries when an automobile, owned and driven by Lois Rogers, collided with his police cruiser. Rogers' liability insurance paid the limits of its liability to the plaintiff in full, but the coverage of Rogers' policy was insufficient to fully compensate the plaintiff for his losses. At the time of the accident, the plaintiff was covered under two automobile insurance policies. One was the plaintiff's personal automobile policy issued by Middlesex Mutual, and the second was the City of Waterbury's policy, issued by Twin City. Both policies included uninsured and underinsured motorist coverage.
The plaintiff alleges that the defendants have refused to compensate him for his injuries, pursuant to the terms of their respective insurance policies and the provisions of Connecticut's underinsured motorist provisions, General Statutes § 38a-336. On April 12, 2000, Middlesex Mutual filed an amended answer to the amended complaint and a cross claim against Twin City. In its cross claim, Middlesex Mutual seeks a declaratory judgment stating that the City of Waterbury's automobile policy, issued by Twin City, provides up to one million dollars in uninsured and underinsured motorist protection, and is the primary policy for uninsured and underinsured motorist protection in this case.
On April 19, 2000, Twin City filed a motion for summary judgment with respect to the limit of uninsured motorist coverage available to the plaintiff. Twin City argues that there are no genuine issues of material fact, and as a matter of law, the limit of uninsured coverage issued by Twin City is $40,000. In support of its motion, Twin City filed a memorandum of law, a copy of the City of Waterbury's automobile insurance policy for July 1, 1994 through July 1, 1995 (Exhibit A), remarks of CT Page 5180 Senator Baker from 26 S. Proc., Pt. 9, 1983 Sess., pp. 3054-56 (Exhibit B), and an affidavit of Douglas P. Rinaldi, the risk manager for the City of Waterbury (Exhibit D).
On June 2, 2000, Middlesex Mutual filed a cross motion for summary judgment for a declaration of coverage on its cross claim. Middlesex Mutual argues that no coverage is afforded under the Middlesex Mutual policy because the City of Waterbury has uninsured and underinsured motorist protection of one million dollars from Twin City. In support of its motion and in opposition to Twin City's motion, Middlesex Mutual filed a memorandum of law, a copy of Middlesex Mutual's interrogatories answered by Twin City, a copy of Middlesex Mutual's insurance coverage of the plaintiff, and a copy of the police accident report from June 5, 1996. On June 6, 2000, the plaintiff filed a memorandum in opposition to Twin City's motion for summary judgment and in support of Middlesex Mutual's motion for summary judgment. In his memorandum, the plaintiff adopts Middlesex Mutual's opposition to Twin City's motion for summary judgment. On June 8, 2000, Twin City filed a supplemental memorandum of law in support of it motion for summary judgment, which included an affidavit of Joan M. LaBanca.
 DISCUSSION
"Practice Book . . . [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Citation omitted; internal quotation marks omitted.) Miles v. Foley, 253 Conn. 381,385-86, 752 A.2d 503 (2000). Summary judgment "is appropriate only if a fair and reasonable person could conclude only one way." Miller v. UnitedTechnologies Corp., 233 Conn. 732, 751, 660 A.2d 810 (1995).
The following facts are not in dispute. In 1983, the state legislature enacted Public Acts 1983, No. 83-461, amending General Statutes § 38-175c (a)(2), which required that "every such policy issued or renewed on and after July 1, 1984, shall provide uninsured motorist coverage with limits for bodily injury and death equal to those purchased to protect against loss resulting from the liability imposed by law unless the insured requests in writing a lesser amount . . ." "The apparent intent of the legislature in adopting subsection (2) was to assure that consumers purchasing automobile liability insurance would be made aware of the low cost of equal amounts of uninsured coverage by requiring any reduction in that coverage to be in writing." Nationwide Mutual Ins. Co.v. Pasion, 219 Conn. 764, 770-71, 594 A.2d 468 (1991). In 1991, General CT Page 5181 Statutes § 38-175c (a)(2) was transferred to § 38a-336.
In 1993, the legislature enacted Public Acts 1993, No. 93-297, amending § 38a-336 (a)(2), which provides that in order to have reduced uninsured coverage on policies issued or renewed after January 1, 1994, an insured must submit a written request for lesser uninsured coverage, and that "[n]o such written request for a lesser amount shall be effective unless [the] insured has signed an informed consent form. . . . "[1] On July 1, 1994, the City of Waterbury renewed its policy with Twin City which included one million dollars in liability coverage and $40,000 in uninsured coverage. (Twin City's Exhibit A.) The city, however, failed to submit a written request for reduced uninsured coverage and failed to sign an informed consent form. On June 5, 1996, the plaintiff was in a car accident which was covered under the City of Waterbury's renewed policy with Twin City. (Middlesex Mutual's Accident Report.)
Middlesex Mutual argues that the City of Waterbury failed to submit a written request for reduced uninsured coverage and failed to sign an informed consent form when it renewed its insurance policy in July, 1994, pursuant to the requirements of § 38a-336. Therefore, Middlesex Mutual argues that the uninsured coverage remained equal to its liability coverage of one million dollars.
Twin City argues that the uninsured coverage is still at $40,000 because the City of Waterbury submitted a written request for reduced uninsured coverage in June, 1992. In addition, Twin City argues that the informed consent form requirement of § 38a-336 (a)(2) applies only to individual insureds and does not apply to municipalities and corporations.
Before addressing the arguments of each party, it is necessary to clarify what § 38a-336 (a)(2) actually requires of an insured in order to lower its uninsured coverage. General Statutes § 38a-336 (a) (2) sets forth two express conditions that must be satisfied before an insured can obtain reduced uninsured coverage. First, "each automobile liability insurance policy issued or renewed on and after January 1, 1994, shall provide uninsured and underinsured motorist coverage . . . equal to . . . loss resulting from the liability imposed by law unless any named insured requests in writing a lesser amount." Therefore, an insured must submit a written request for reduced uninsured coverage or its uninsured coverage will remain equal to its liability coverage. General Statutes § 38a-336 (a)(2) goes on to provide that "[n]o such written request for a lesser amount shall be effective unless any named insured has signed an informed consent form . . ." Not only does § CT Page 518238a-336 (a)(2) require a written request, but it also requires that the insured sign an informed consent form that provides the insured with consumer information on uninsured coverage.
With respect to the first requirement of a written request, Middlesex Mutual argues that, based upon its discovery efforts, Twin City never confirmed whether the City of Waterbury submitted a written request for reduced uninsured coverage. (Middlesex Mutual's Interrogatories.) In opposition to Middlesex Mutual's evidence, Twin City filed an affidavit of Joan M. LaBanca, a claims specialist for The Hartford, who testified that on June 25, 1992, The Hartford received a letter from the city of Waterbury's insurance agent requesting a reduced uninsured motorist coverage of $40,000. (LaBanca Aff. ¶¶ 5-6.)
The dispute over whether Twin City received a written request in 1992 is immaterial because, pursuant to § 38a-336 (a)(2), even if the City of Waterbury submitted a written request for reduced uninsured coverage in 1992, this request was no longer effective for subsequent renewals issued after January 1, 1994. See Travelers Indemnity Co. v.Malec, 215 Conn. 399, 405, 576 A.2d 485 (1990). In Travelers IndemnityCo. v. Malec, an insured submitted a written request for reduced uninsured coverage in 1982. Id., 400. In 1983, the state legislature enacted Public Acts 1983, No. 83-461, amending § 38-175c (a)(2), which required that all automobile policies issued or renewed after January 1, 1984 must have uninsured coverage equal to liability coverage unless the insured submits a written request for a lesser amount. Id., 400-01. In July, 1984, Travelers reissued its automobile coverage to the insured, but the insured did not submit a new written request for reduced uninsured coverage. Id., 401. Thereafter, in February, 1985, there was a car accident and a dispute arose over whether the uninsured coverage was at one million dollars or at $40,000. Id. The court held that, pursuant to the requirement of § 38-175c (a)(2), the uninsured coverage was one million dollars because the insured failed to submit a new written request for reduced uninsured coverage when it renewed its policy in July, 1984. Id., 405. In rejecting the insured's prior written request, the court stated that "[w]e are entitled to presume that if the legislature intended that past acts could constitute compliance with the mandate of requests for a lesser amount pursuant to statute, language to that effect would appear in the statute." Id., 404.
The statute at issue in this case, § 38a-336 (a)(2), is practically identical to the statute in Travelers Indemnity Co, and just like the insured in Travelers Indemnity Co, the City of Waterbury failed to submit a new written consent form when it renewed its policy in 1994. General Statutes § 38a-336 (a)(2), clearly states that "each automobile liability insurance policy issued or renewed on and after CT Page 5183 January 1, 1994, shall provide uninsured and underinsured motorist coverage . . . equal to . . . loss resulting from the liability imposed by law unless any named insured requests in writing a lesser amount." Because the City of Waterbury failed to submit a new written request for uninsured coverage in 1994 and written requests given prior to 1994 do not comply with § 38a-336 (a)(2); Travelers Indemnity Co. v. Malec, supra, 215 Conn. 404; the court concludes that, as a matter of law, the uninsured motorist coverage in 1994 was in the amount of one million dollars.
With respect to the second requirement of informed consent, Twin City argues that the § 38a-336 (a)(2) applies only to individual insureds and does not apply to municipalities and corporations. Twin City argues that the statutory language, "you and your family," set forth in the consent form indicates the legislature's intention to limit this requirement to those of unsophisticated individual insureds. In disputing Twin City's argument, Middlesex Mutual argues that the purpose of the statute is to protect all consumers, and that the courts have never recognized a litmus test' of applying law based upon the sophistication of the consumer.
Presently, there is no appellate authority on this issue. In the absence of applicable precedent this court concludes that the mandated language of "you and your family" on the informed consent form does not express a legislative intent to apply this requirement exclusively to individual consumers. The statutory requirement of a written request for lower uninsured coverage has been in effect since 1984, and has consistently applied to "every such policy."[2] In 1993, the legislature amended § 38a-336 (a)(2), adding the requirement that "[n]o such written request for a lesser amount shall be effective unless any named insured has signed an informed consent form. . . ." Noticeably absent from this provision is any language indicating that corporations or municipalities are excluded from the statutory requirement that a consent form be executed in order to waive increased limits on underinsured coverage. When "the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent." (Internal quotation marks omitted.) Office of Consumer Counsel v. Dept. PublicUtility Control, 246 Conn. 18, 29, 716 A.2d 78 (1998)
The insurance policy at issue, however, is a fleet insurance policy,[3]
and our Supreme Court, in Frantz v. United States Fleet Leasing, Inc.,245 Conn. 727, 714 A.2d 1222 (1998), held that "commercial fleet insurance gives rise to a significantly different set of expectations and considerations than does personal automobile insurance." Id., 741. The court ruled that, while a large corporation "may be considered a CT Page 5184 consumer' of insurance in the broadest sense of the word, we do not believe that a company that . . . is covered under a commercial fleet policy, falls within the class of consumers that the legislature sought to protect in requiring the signature of all named insureds under § 38a-336
(a)(2)." Id., 739. The court noted that many "large corporations covered under commercial fleet policies . . . [have] departments that specialize in legal and insurance matters . . . [and that are] fully aware of the relative cost of uninsured motorist coverage and the implications of their decision. . . ." Id.
Twin City argues that this same reasoning should also apply to the present case because the City of Waterbury has its own legal department and did not need to sign a consent form with information on consumer options. Another court recently recently addressed this issue for the first time in Simpson v. National Union Fire Ins. Co. of Pittsburgh, PA, Superior Court, judicial district of Hartford, Docket No. 579769 (Sept. 8, 2000, Peck, J.). In that case, the court held that, pursuant t-o the reasoning of Frantz, the consent form required by § 38a-336 (a)(2) did not apply to commercial fleet policies because large corporations have legal specialists who aware of the costs and benefits of uninsured coverage, and that a corporation's endorsement of the policy was sufficient consent. The facts of Frantz are distinguishable from the present case.
In Frantz, the court dealt with an insurance policy that was issued in 1992, before the legislature added the informed consent form requirement. As a result, the court in Frantz only addressed the issue of whether a corporation needed to obtain the written consent of all possible insureds, including subsidiaries and its leasing company, in order to obtain lower uninsured coverage. Id. Our Supreme Court discussed the specific language of § 38a-336 (a)(2), "unless any named insured requests in writing a lesser amount," and declared that it would be unreasonable to expect all possible insureds under a fleet policy to sign the request, given the large amount of such insureds. Id., 739-40. Therefore, the court ruled that the signed consent of the leasing company was unnecessary and that the sole written request of the employer, General Dynamics, was effective in lowering its uninsured coverage pursuant to § 38a-336 (a)(2). Id., 742. The court in Frantz did not eliminate the requirement that a written request and consent form be executed and submitted by the insured corporation. The court simply held that the written consent requirement of all insureds under a policy did not apply in a large business context.
Because the statutory language of § 38a-336 (a)(2) does not exempt municipalities and corporations from the written consent requirement, and there is no appellate authority giving corporations and municipalities CT Page 5185 such an exemption, it is submitted that as a matter of law, the statute's written consent form requirement applies to all insureds, including municipalities. As a result, because the City of Waterbury did not sign an informed consent form upon renewal of its policy in 1994, pursuant to § 38a-336 (a)(2), it is determined that the City of Waterbury maintained, at the time of the accident in question, one million dollars in uninsured motorist coverage.
 CONCLUSION
Because the City of Waterbury failed to submit a written request and failed to sign an informed consent form upon renewal of its policy in 1994 as required by General Statutes § 38a-336 (a)(2), its uninsured coverage at the time of the accident was one million dollars.
For the foregoing reasons, the defendant Twin City's motion for summary judgment is denied and the cross complainant Middlesex Mutual's motion for summary judgment is granted.
SO ORDERED.
ROBERT L. HOLZBERG, J.