[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT TWIN CITY'S CROSS MOTION FOR SUMMARY JUDGMENT
 FACTS
On November 6, 1998, the plaintiffs, Richard J. Brown and his wife, Terry Brown, filed a two count substituted complaint against the defendants, Twin City Fire Insurance Company (Twin City) and Peerless Insurance Company (Peerless), alleging that the defendants failed to pay the plaintiffs pursuant to the terms of their insurance policies.[1]
The plaintiffs allege that on August 13, 1994, Richard J. Brown, a Waterbury police officer, sustained injuries when the vehicle he was riding in was involved in a car accident. Neither the owner nor the driver of the other car had automobile insurance. The plaintiffs allege CT Page 5161 that at the time of the accident, the City of Waterbury was insured under an automobile policy issued by the defendant, Twin City. This policy also provided coverage for uninsured motorists.
On April 17, 2000, the plaintiffs filed a motion for summary judgment on the grounds that there are no genuine issues of material fact, and as a matter of law, in 1994, the City of Waterbury was insured for uninsured motorist coverage in the amount of one million dollars.[2] In support of their motion, the plaintiffs submitted a memorandum of law, a copy of the accident report (Exhibit A), a copy of the City of Waterbury's automobile insurance policy with Twin City from 1994 through 1995 (Exhibit D), a letter from the City of Waterbury's insurance agent requesting $40,000 in uninsured motorist coverage (Exhibit E), and a letter from the State of Connecticut insurance department concerning the informed consent form requirements (Exhibit F)
On April 19, 2000, Twin City filed a cross motion for summary judgment on the grounds that there are no genuine issues of material fact, and as a matter of law, the City of Waterbury's uninsured motorist coverage in 1994 was $40,000 and not one million dollars. In support of its motion and in opposition to the plaintiffs' motion, Twin City filed a memorandum of law, a copy of the City of Waterbury's automobile insurance policy for July 1, 1994 through July 1, 1995 (Exhibit A), remarks of Senator Baker from 26 S. Proc., Pt. 9, 1983 Sess., pp. 3054-56 (Exhibit B), and an affidavit of Douglas P. Rinaldi, the risk manager for the City of Waterbury (Exhibit D).
 DISCUSSION
"Practice Book . . . [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Citation omitted; internal quotation marks omitted.) Miles v. Foley, 253 Conn. 381,385-86, 752 A.2d 503 (2000). Summary judgment "is appropriate only if a fair and reasonable person could conclude only one way." Miller v. UnitedTechnologies Corp., 233 Conn. 732, 751, 660 A.2d 810 (1995).
The following facts are not in dispute. In 1983, the state legislature enacted Public Acts 1983, No. 83-461, amending General Statutes § 38-175c (a)(2), which required that "every such policy issued or renewed on and after July 1, 1984, shall provide uninsured motorist coverage with limits for bodily injury and death equal to those purchased to protect against loss resulting from the liability imposed by law unless the CT Page 5162 insured requests in writing a lesser amount . . ." "The apparent intent of the legislature in adopting subsection (2) . . . was to assure that consumers purchasing automobile liability insurance would be made aware of the low cost of equal amounts of uninsured coverage by requiring any reduction in that coverage to be in writing." Nationwide Mutual Ins. Co.v. Pasion, 219 Conn. 764, 770-71, 594 A.2d 468 (1991). In 1991, General Statutes § 38-175c (a)(2) was transferred to § 38a-336.
In 1992, Twin City received a written request from the City of Waterbury to lower its uninsured coverage from one million dollars to $40,000. (Plaintiffs' Exhibit E.) In 1993, the legislature enacted Public Acts 1993, No. 93-297, amending § 38a-336 (a)(2), which provides that in order to have reduced uninsured coverage on policies issued or renewed after January 1, 1994, an insured must submit a written request for lesser uninsured coverage, and that "[n]o such written request for a lesser amount shall be effective unless [the] insured has signed an informed consent form. . . ." On July 1, 1994, Twin City renewed its policy with the City of Waterbury, with one million dollars in liability coverage and $40,000 in uninsured motorist coverage, (Plaintiffs' Exhibit D), but the city failed to submit a written request for reduced uninsured coverage and did not sign an informed consent form. On August 14, 1994, the plaintiff was in a car accident which was covered under the City of Waterbury's renewed policy with Twin City. (Plaintiffs' Exhibit A.)
The plaintiffs argue that even though the City of Waterbury made a written request on June 25, 1992 to reduce its uninsured motorist coverage to $40,000, this request was no longer effective at the time of the accident because it predated § 38a-336 (a)(2). The plaintiffs argue that because the City of Waterbury failed to submit a written consent form for reduced uninsured coverage when it renewed its policy in 1994, the coverage remained equal to its liability coverage of one million dollars.
Before addressing the arguments of each party, it is necessary to clarify what General Statutes § 38a-336 (a)(2) actually requires of an insured in order to lower its uninsured coverage. General Statutes § 38a-336 (a)(2) has two express conditions that must be satisfied before an insured can obtain reduced uninsured coverage. First, "each automobile liability insurance policy issued or renewed on and after January 1, 1994, shall provide uninsured and underinsured motorist coverage . . . equal to . . . loss resulting from the liability imposed by law unless any named insured requests in writing a lesser amount." Therefore, an insured must submit a written request for reduced uninsured coverage or its uninsured coverage will remain equal to its liability coverage. General Statutes § 38a-336 (a)(2) goes on to provide that "[n]o such written request for a lesser amount shall be effective unless CT Page 5163 any named insured has signed an informed consent form. . . ." Not only does § 38a-336 (a)(2) require a written request, but it also requires that the insured sign an informed consent form that provides the insured with consumer information on uninsured coverage.
With respect to the first requirement of § 38a-336 (a)(2), the City of Waterbury's 1992 written request for reduced uninsured coverage was no longer effective for subsequent renewals issued after January 1, 1994. See Travelers Indemnity Co. v. Malec, 215 Conn. 399, 405,576 A.2d 485 (1990). In Travelers Indemnity Co. v. Malec, an insured submitted a written request for reduced uninsured coverage in 1982. Id., 400. In 1983, the state legislature enacted Public Acts 1983, No. 83-461, amending § 38-175c (a)(2), which required that all automobile policies issued or renewed after January 1, 1984 must have uninsured coverage equal to liability coverage unless the insured submits a written request for a lesser amount.[3] Id., 400-01. In July, 1984, Travelers reissued its automobile coverage to the insured, but the insured did not submit a new written request for reduced uninsured coverage. Id., 401. Thereafter, in February, 1985, there was a car accident and a dispute arose over whether the uninsured coverage was for one million dollars or for $40,000. Id. The court held that, pursuant to the requirement of General Statutes § 38-175c (a)(2), the uninsured coverage was one million dollars because the insured failed to submit a new written request for reduced uninsured coverage when it renewed its policy. Id., 405. In rejecting the insured's prior written request, the court stated that "[w]e are entitled to presume that if the legislature intended that past acts could constitute compliance with the mandate of requests for a lesser amount pursuant to statute, language to that effect would appear in the statute." Id., 404.
The statute at issue in this case, General Statutes § 38a-336
(a)(2), is practically identical to the statute in Travelers IndemnityCo, and just like the insured in Travelers Indemnity Co, the City of Waterbury failed to submit a new written request for reduced coverage when it renewed its policy in 1994. Section 38a-336 (a)(2), clearly states that "each automobile liability insurance policy issued or renewed on and after January 1, 1994, shall provide uninsured and underinsured motorist coverage . . . equal to . . . loss resulting from the liability imposed by law unless any named insured requests in writing a lesser amount." Because the City of Waterbury failed to submit a new written request for uninsured coverage in 1994 and written requests given prior to 1994 do not comply with General Statutes § 38a-336 (a)(2);Travelers Indemnity Co. v. Malec, supra, 215 Conn. 404; the court concludes that, as a matter of law, the City of Waterbury's uninsured coverage in 1984 was in the amount of one million dollars. CT Page 5164
With respect to the second requirement of § 38a-336 (a)(2) Twin City argues that the informed consent form requirement of § 38a-336
(a)(2) applies only to individual insureds and does not apply to municipalities and corporations. Twin City argues that the statutory language, "you and your family," in the consent form language indicates the legislature's intention to limit this requirement to those of unsophisticated individual insureds. In disputing Twin City's argument, the plaintiffs argue that the statutory language of § 38a-336
(a)(2), such as "each automobile policy" and "shall apply to all subsequent renewals of coverage and to all policies," indicates that the statute applies to all policies and not just to individual consumers.
Presently, there is no appellate authority on this issue. In the absence of applicable precedent, this court concludes that the mandated language of "you and your family" on the informed consent form does not express a legislative intent to limit the informed consent requirement to only individual consumers. The statutory requirement of a written request for lower uninsured coverage has been in effect since 1984, and has consistently applied to "every such policy." In 1993, the legislature amended § 38a-336 (a)(2), adding the requirement that "[n]o such written request for a lesser amount shall be effective unless any named insured has signed an informed consent form. . . ." Noticeably absent from this provision is any language indicating that corporations or municipalities are excluded from the informed consent form requirement. When "the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent." (Internal quotation marks omitted.)Office of Consumer Counsel v. Dept. Public Utility Control, supra,246 Conn. 29.[4]
The insurance policy at issue, however, is a fleet insurance policy,[5]
and our Supreme Court, in Frantz v. United States Fleet Leasing, Inc.,245 Conn. 727, 714 A.2d 1222 (1998), held that "commercial fleet insurance gives rise to a significantly different set of expectations and considerations than does personal automobile insurance." Id., 741. The court ruled that, while a large corporation "may be considered a `consumer' of insurance in the broadest sense of the word, we do not believe that a company that . . . is covered under a commercial fleet policy, falls within the class of consumers that the legislature sought to protect in requiring the signature of all named insureds under § 38a-336
(a)(2)." Id., 739. The court noted that many "large corporations covered under commercial fleet policies . . . [have] departments that specialize in "legal and insurance matters . . . [and that are] fully aware of the relative cost of uninsured motorist coverage and the implications of their decision . . . ." Id. CT Page 5165
Twin City argues that this same reasoning should also apply to the present case because the City of Waterbury has its own legal department and did not need to sign a consent form with information on consumer options. Another Superior Court recently addressed this issue for the first time in Simpson v. National Union Fire Ins. Co. of Pittsburgh, PA, Superior Court, judicial district of Hartford, Docket No. 579769 (Sept. 8, 2000, Peck, J.). In that case, the court held that, pursuant to the reasoning of Frantz, the required consent form of § 38a-336 (a)(2) did not apply to commercial fleet policies because large corporations have legal specialists who are aware of the costs and benefits of uninsured coverage, and that the corporation's endorsement of the policy was sufficient consent. The facts of Frantz are distinguishable from the present case.
In Frantz, the court dealt with an insurance policy that was issued in 1992, before the legislature added the informed consent form requirement. As a result, the court in Frantz, only addressed the issue of whether a corporation needed to get a written request from all possible insureds, including subsidiaries and its leasing company, in order to get lower uninsured coverage. Id. Our Supreme Court discussed the specific language of § 38a-336 (a)(2), "unless any named insured requests in writing a lesser amount," and declared that it would be unreasonable to expect all possible insureds under a fleet policy to sign the request, given the large amount of possible insureds. Id., 739-40. Therefore, the court ruled that the signed request of the leasing company was unnecessary and that the sole written request of the employer, General Dynamics, was effective in lowering its uninsured coverage pursuant to § 38a-336 (a)(2). Id., 742. The court in Frantz did "not remove the requirement for a written request or a consent form from the insured corporation. The court simply held that in a large business context, where there are fleet policies, it is unnecessary to have all possible insureds sign the written request in order to fulfill the requirement of § 38a-336 (a)(2).
Because the statutory language of § 38a-336 (a)(2) does not exempt municipalities and corporations from the informed consent form requirement, and there is no appellate authority providing corporations and municipalities with such an exemption, the informed consent form requirement of § 38a-336 (a)(2) applies to all insureds, including municipalities. As a result, because the City of Waterbury did not sign an informed consent form upon renewal of its policy in 1994, pursuant to § 38a-336 (a)(2), it is determined that the City of Waterbury maintains one million dollars in uninsured motorist coverage.
 CONCLUSION
CT Page 5166
Because the City of Waterbury failed to submit a written request for reduced uninsured motorist coverage and failed to sign an informed consent form upon renewal of its insurance coverage in 1994, its uninsured motorist coverage at the time of the accident in question was one million dollars.
For the foregoing reasons, the plaintiffs' motion for summary judgment is granted and Twin City's cross motion for summary judgment is denied.
SO ORDERED
ROBERT L. HOLZBERG, J.