ROBERT SMITH ET AL. *v.* MITSUBISHI MOTORS CREDIT OF AMERICA, INC., ET AL.

MICHAEL PALMER *v.* MITSUBISHI MOTORS CREDIT OF AMERICA, INC., ET AL.
(SC 15950)

Borden, Norcott, Katz, Palmer and Peters, Js.

Argued November 4—officially released December 29, 1998

*Frederick L. Murolo*, with whom was *Jeffrey L. Fisher*, for the appellant (named defendant).

*Geoffrey Naab*, for the appellee (defendant Christopher J. Moore).

PETERS, J. The principal issue in this case is the validity, as a matter of public policy, of an indemnity clause in a multiyear automobile lease. General Statutes § 14-154a[1] imposes on the owner of a leased automobile liability for injuries to third parties caused by the tortious conduct of the automobile's lessee. The specific issue before us is whether that statute bars the enforcement of a clause in an automobile lease that requires the lessee to "indemnify and hold harmless" the owner that has fulfilled its statutory obligation to pay damages to injured third parties. We conclude that the statute does not invalidate the indemnity clause.

The named plaintiffs, Robert Smith and Michael Palmer, brought actions against the defendant Christopher J. Moore alleging that Moore's negligence and recklessness in driving his leased automobile had caused them to suffer personal injuries. Relying on § 14-154a, they also sought damages from the named defendant, Mitsubishi Motors Credit of America, Inc. (Mitsubishi), as the owner of the automobile leased to Moore.[2] Palmer settled his claim against Mitsubishi for $287,500, and Smith, after a jury trial, obtained a judgment against Mitsubishi for $265,000. The merits of those underlying proceedings are not at issue in the present appeal.

In response to the named plaintiffs' complaints, Mitsubishi filed answers and cross claims against Moore for indemnity. In its cross claims, Mitsubishi alleged that Moore was liable both because of an indemnity

---

[1] General Statutes § 14-154a provides: "Any person renting or leasing to another any motor vehicle owned by him shall be liable for any damage to any person or property caused by the operation of such motor vehicle while so rented or leased, to the same extent as the operator would have been liable if he had also been the owner."

[2] Moore was the operator of a leased motor vehicle, and Mitsubishi was the vehicle's owner under the definitions of "operator" and "owner" provided by General Statutes § 14-1.

clause in the automobile lease and because of common-law principles of indemnity. Moore moved for summary judgment on both claims, and Mitsubishi moved for summary judgment on the claim regarding the indemnity clause in the lease. The trial court granted Moore's motions and denied Mitsubishi's motions and rendered judgments accordingly. Mitsubishi appealed from the judgments.[3]

Mitsubishi, the appellant, has raised three issues challenging the rulings of the trial court. It claims that the court improperly held that: (1) the contractual indemnity clause was unenforceable as inconsistent with the policy of § 14-154a; (2) the contractual indemnity clause was unenforceable on the ground of unconscionability; and (3) common-law indemnity has no applicability in this case. Because we agree with Mitsubishi's first two contentions, we need not decide its common-law claim.

## I

## PUBLIC POLICY

The automobile lease that Mitsubishi drafted and Moore signed was a two page document that contained numerous provisions for the protection of Mitsubishi.[4] The clause that the trial court found to be unenforceable provides in relevant part: "13. INDEMNITY, LIENS AND FINES. . . . I agree to indemnify you (that is, I will pay you) and hold you harmless for losses, damages, claims, injuries and expenses (including attorneys' fees) that result from this Lease, or from the manufacture, selection, delivery or possession of the Vehicle, or

---

[3] Although Mitsubishi properly filed its appeal in the Appellate Court, we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

[4] For example, in paragraph twenty-four, the lease limited the mileage that was allowable for the lease term; in paragraph seven, it required the lessee to pay for vehicle maintenance; and, in paragraph twenty-one, it specified the amount of motor vehicle liability insurance that the lessee was required to carry.

which relate to the condition, maintenance, use or operation of the Vehicle. My agreement to indemnify you and hold you harmless will survive termination of this Lease and repossession of the Vehicle." The clause appears on the first page of the lease, where it is set off in a separate paragraph from clauses that, in similar type, disclaim warranties, impose liability for damage to the vehicle and specify default. Moore has not claimed ambiguity in the language of paragraph thirteen or any other clause in the lease. Compare *Burkle* v. *Car & Truck Leasing Co.*, 1 Conn. App. 54, 57, 467 A.2d 1255 (1983) (evaluating clarity of indemnity clause where plaintiff had alleged ambiguity).

The trial court concluded that the indemnity clause violated the statutory policy of § 14-154a and thus was unenforceable on public policy grounds. In the court's view, such a clause was an impermissible attempt to override the obligations that the statute imposed on Mitsubishi. We disagree.

For more than 100 years, § 14-154a and its statutory antecedents have imposed on owners of leased vehicles obligations that significantly supplement common-law principles of vicarious liability. We have construed the statute as having created a "statutory suretyship," pursuant to which the owner of a leased automobile, driven by an authorized driver, is directly liable for injuries caused by the operation of the vehicle. See *Gionfriddo* v. *Avis Rent A Car System, Inc.*, 192 Conn. 280, 284, 287–88, 472 A.2d 306 (1984); *Levick* v. *Norton*, 51 Conn. 461, 469 (1884).

The purpose of the statutory suretyship imposed by § 14-154a is to protect members of the public from injuries caused by the improper use of a leased automobile. Each of our decided cases concerning § 14-154a and its predecessors illustrates and enforces that statutory purpose, because each involved litigation between

injured parties and the owner of the automobile. *Pedevillano* v. *Bryon*, 231 Conn. 265, 268–69, 648 A.2d 873 (1994); *Gionfriddo* v. *Avis Rent A Car System, Inc.*, supra, 192 Conn. 282–83; *Fisher* v. *Hodge*, 162 Conn. 363, 369, 294 A.2d 577 (1972); *Graham* v. *Wilkins*, 145 Conn. 34, 37, 138 A.2d 705 (1958); *Farm Bureau Mutual Automobile Ins. Co.* v. *Kohn Bros. Tobacco Co.*, 141 Conn. 539, 542–43, 107 A.2d 406 (1954); *Connelly* v. *Deconinck*, 113 Conn. 237, 240, 155 A. 231 (1931); *Levy* v. *Daniels' U-Drive Auto Renting Co.*, 108 Conn. 333, 336, 143 A. 163 (1928); *Marshall* v. *Fenton*, 107 Conn. 728, 731, 142 A. 403 (1928); *Levick* v. *Norton*, supra, 51 Conn. 468–69.[5]

In the trial court, and in this appeal, Moore urges that § 14-154a serves a second purpose as well. That purpose, he argues, is to shield a negligent operator of a leased automobile from contractual liability to the automobile's owner. For three reasons, we are not persuaded.

First, and most important, the text of the statute provides no support for Moore's position. It addresses liability "for any *damage* to any person or property *caused by the operation of such motor vehicle* while so rented or leased, *to the same extent as the operator would have been liable* if he had also been the owner." (Emphasis added.) General Statutes § 14-154a. Moore is not a person who has been "damaged" by his own negligent operation of the leased automobile. The persons who have been "damaged" are the named plaintiffs. Without exception, all our cases have construed the statutory language of "damage" as referring to the claims of the parties injured by the tortious operation of the automobile. In *Farm Bureau Mutual Automobile Ins. Co.* v. *Kohn Bros. Tobacco Co.*, supra, 141 Conn.

---

[5] The named plaintiffs in this case relied on § 14-154a as the basis for their claim for recovery of damages from Mitsubishi.

543–44, we held, furthermore, that an owner of an automobile who must pay damages under the statute may recover from a driver who negligently caused the injury. Moore has cited no appellate case to the contrary, and we have found none. In our view, it would turn the statute on its head to construe the intended protection of injured members of the public to include protection of the tortfeasor who himself caused the injuries to occur.

Second, Moore's position would make Mitsubishi an insurer of Moore's tort liability. Moore does not, and cannot, point to any clause in the automobile lease that would bear such a construction. The unambiguous indemnity clause expressly states the opposite, making Moore liable to Mitsubishi for payments made by Mitsubishi as a result of Moore's tortious conduct. Moore has articulated no reason why, as a matter of public policy, a tortfeasor should not be held accountable for the damages that he himself has caused.

Third, Mitsubishi's duty as a statutory surety does not conflict, in any way, with its right to enforce the indemnity clause in its automobile lease. It has long been the law that, after payment, a surety is entitled to reimbursement from an underlying obligor who has notice of the suretyship. "From time immemorial courts of equity have recognized the surety's right to reimbursement upon payment of his principal's debt. . . . For a long time . . . it has been generally recognized that the surety, upon payment, may recover of his principal in an action at law for money paid to the principal's use. . . . [C]ourts of law today treat the right of reimbursement as founded upon a contract implied in fact . . . ." L. Simpson, Handbook on the Law of Suretyship (1950) § 48, pp. 225–26. For an updated statement of the same principle, see Restatement (Third), Suretyship and Guaranty § 22, pp. 93–94 (1996); see generally *Johnson* v. *Mortenson*, 110 Conn. 221, 229, 147 A. 705 (1929).

Moore has cited no contrary precedent in Connecticut law, and we have been unable to find any. The indemnity clause in the lease in this case, therefore, makes express what the common law has held to be implicit in the concept of suretyship.

For these reasons, we conclude, contrary to the trial court, that § 14-154a does not preclude, as a matter of public policy, the enforcement of an indemnity clause in an automobile lease in cases in which the lessee, as tortfeasor, has caused injuries for which the owner has paid damages. An automobile owner's statutory liability to injured third persons does not shield such a lessee from liability.

## II

## UNCONSCIONABILITY

The contractual indemnity clause was contained in an automobile lease that was a form contract.[6] Moore claims, and the trial court held, that the clause was unenforceable because it was unconscionable. The classic definition of an unconscionable contract is one "which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other." (Internal quotation marks omitted.) *Neal* v. *Lacob*, 31 Ill. App. 3d 137, 142, 334 N.E.2d 435 (1975), quoting *Hume* v. *United States*, 132 U.S. 406, 410, 10 S. Ct. 134, 33 L. Ed. 393 (1889). In practice, we have come to divide this definition into two aspects of unconscionability, one procedural and the other substantive, the first intended to prevent unfair surprise and the other intended to prevent oppression. See *Cheshire Mortgage Service, Inc.* v.

---

[6] Although Moore characterizes the form contract as a contract of adhesion, the record contains nothing to substantiate that characterization. The trial court made no such finding. A form contract between an individual and a corporate supplier of goods or services is not invariably a contract of adhesion.

*Montes,* 223 Conn. 80, 88–89, 612 A.2d 1130 (1992). We are not persuaded that Moore presented sufficient evidence on either aspect to sustain the trial court's judgments.

A

Procedural Unconscionability

The trial court held no evidentiary hearing on the issue of procedural unconscionability. It made no express findings of fact relating thereto. We may infer that it relied exclusively on the affidavit filed by Moore with respect to Mitsubishi's motion for summary judgment on its cross claim, and on the copy of the lease that was attached as an exhibit. Mitsubishi filed no counteraffidavit.

It is an understatement to characterize Moore's affidavit as sparse.[7] The only paragraph of relevance to his claim is paragraph three. That paragraph provides only: "No one called my attention to section 13 of the

---

[7] The affidavit, in its entirety, provides:

"AFFIDAVIT OF CHRISTOPHER J. MOORE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON MITSUBISHI'S CROSS-CLAIM

"Christopher J. Moore of New Haven, Connecticut, being first duly sworn, deposes and says:

"1. I am a defendant in these cases. I am over the age of majority and understand the obligation of an oath. I make this affidavit of my personal knowledge.

"2. On or about January 4, 1994 I signed a Vehicle Lease at Girard Mitsubishi in Groton. A copy of the lease agreement is attached to this Affidavit as Exhibit A.

"3. No one called my attention to section 13 of the Agreement, entitled, 'Indemnity, Liens and Fines.' My attention was mainly directed to the provisions concerning insurance, mileage, payments and signatures.

"4. I obtained and maintained throughout the life of the lease Bankers & Shippers Insurance Co. policy no. LCT-0322312-01, with all the coverages required by section 21 of the Lease, including specifically bodily injury liability coverage with limits of $100,000 per person and $300,000 per occurrence, which covers both me and Mitsubishi for the accident of January 24, 1995."

The affidavit was dated, signed and sworn to before Moore's counsel.

Agreement, entitled, 'Indemnity, Liens and Fines.' My attention was mainly directed to the provisions concerning insurance, mileage, payment and signatures."

As Mitsubishi aptly observes, that statement is notable for what it does not assert. Moore does not state that he: (1) was a consumer leasing the automobile for consumer purposes;[8] (2) had no opportunity to read the two page automobile lease as a whole; (3) had difficulty, because of the size of the type and the location of the indemnity clause in the lease, in reading the text of the clauses in the lease that had not specifically been called to his attention; (4) had failed to understand the indemnity clause because of its use of obscure legalese; (5) had been unable to read or understand the indemnity clause in the lease because he was illiterate or blind or otherwise disabled from having access thereto; (6) had no opportunity to bargain over the clauses in the lease because Mitsubishi's competitors used similar form contracts; or (7) had no prior experience with standard terms in automobile leases.[9]

To establish a basis for its finding of procedural unconscionability, the trial court, therefore, must have concluded, without *any* evidence of overreaching, that Mitsubishi's use of a form contract imposed on it a sua sponte duty to direct the attention of any potential individual lessee to important clauses contained in the automobile lease. To state so unconditional a proposition is to refute it. We have never held that principles of unconscionability supersede, in toto, the duty of a

---

[8] That omission is significant because, without any factual basis, in his brief Moore consistently describes himself as a consumer. The trial court made no such finding. Nothing in the record precludes the possibility that Moore was a small business man using the leased automobile for business purposes.

[9] This list is illustrative only. We do not mean to suggest that it contains an exhaustive list of the factual considerations that a court may take into account to determine whether a party has proved procedural unconscionability in a contract that the party has signed.

contracting party to read the terms of an agreement or else be deemed to have notice of the terms. See, e.g., *G & R Tire Distributors, Inc.* v. *Allstate Ins. Co.*, 177 Conn. 58, 61–62, 411 A.2d 31 (1979); *Ursini* v. *Goldman*, 118 Conn. 554, 562, 173 A. 789 (1934); see also *Carnival Cruise Lines, Inc.* v. *Shute*, 499 U.S. 585, 593–95, 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1991); *Northwestern National Ins. Co.* v. *Donovan*, 916 F.2d 372, 377–78 (7th Cir. 1990).

The closest we have come to addressing this issue directly is in *Cheshire Mortgage Service, Inc.* v. *Montes*, supra, 223 Conn. 88–91. In that case, having identified the purpose of the unconscionability doctrine as the prevention of unfair surprise; id., 88; we concluded that procedural unconscionability had not been established. Id., 91. Among the factors that we considered significant was the fact that the defendants who sought to invoke the doctrine had been advised by the plaintiff, ab initio, about the contents of the disputed clause in the mortgage that the defendants had signed. Id., 90.

Our decision in *Cheshire Mortgage Service, Inc.*, afforded us no opportunity to consider whether, in the absence of such advice, enforcement of the mortgage would have been procedurally unconscionable. In light of the principles expressed throughout our case law, we hold today that procedural unconscionability cannot be predicated solely on the failure by a commercial party proffering a form contract to an individual party to direct the individual's attention to specific terms of a contractual agreement. See generally 1 E. Farnsworth, Contracts (2d Ed. 1998) §§ 4.26 and 4.28.

We conclude, therefore, that the trial court improperly determined that Moore had proved procedural unconscionability in Mitsubishi's dealings with him. Neither the lease itself, nor Moore's affidavit incorporat-

ing the lease factually supported the trial court's ruling in favor of Moore. The court therefore had no basis for its expansive statement that the indemnity clause in this case was unconscionable because the underlying transaction involved "a corporate entity and an individual."

## B

### Substantive Unconscionability

Even in the absence of procedural unconscionability, Moore might avoid liability under the indemnity clause in the lease if he could establish that the clause was substantively unconscionable.[10] The opinion of the trial court might be construed to have come to such a conclusion.[11] If it did so, we disagree with it.

The principal reason why Moore's claim of substantive unconscionability cannot be sustained is that it is no more than a reformulation of his public policy argument about the relationship between the indemnity clause and § 14-154a. That argument we have already rejected in part I of this opinion.

In addition, however, Moore argues that the indemnity clause is unfair and oppressive because other terms in the lease agreement provided Mitsubishi with sufficient protection against damages claims. He points especially to the automobile insurance clause, paragraph twenty-one, which required him to obtain and

---

[10] The reverse of this proposition is, however, debatable. Professor E. Allan Farnsworth has written: "Courts have resisted applying the doctrine [of unconscionability] where there is only procedural unconscionability without substantive unfairness." 1 E. Farnsworth, supra, § 4.28, p. 560. We need not decide that issue in the present case.

[11] In its opinion, the trial court stated: "This court determines as a matter of law where there is a transaction involving a corporate entity and an individual, as there is in this case, any indemnification clause based on the facts in this case would be unconscionable."

maintain, among other things, liability coverage of $100,000 per person and $300,000 per incident.[12] In his view, read in the context of the lease as a whole, the indemnity clause was unreasonably favorable to Mitsubishi.

We find Moore's position untenable. First, the trial court never ruled expressly on that argument, and Moore's brief does not indicate in what manner, if any,

[12] Paragraph twenty-one provides: "VEHICLE INSURANCE. I understand that I must pay for and keep in force the following minimum insurance coverages during the Lease Term and until the Vehicle is returned to you:

"a. Public liability for bodily injury or death to any one person for $100,000 and for any one occurrence for $300,000;

"b. Property damage liability for $50,000;

"c. Comprehensive, including fire and theft, for the Vehicle's actual value (payable in cash—not by a replacement vehicle) with a maximum deductible of $500 (unless another amount is shown here $ n.a.); and

"d. Collision for the Vehicle's actual value (payable in cash—not by a replacement vehicle) with a maximum deductible of $500 (unless another amount is shown here $ n.a.).

"The policy must provide you with primary coverage as an additional insured on coverages (a) and (b) and as the loss payee on coverages (c) and (d). The policy must also provide you with at least thirty (30) days' advance notice of any cancellation of coverage and with coverage for the minimum limits required by any no-fault and uninsured motorist law. If I fail to maintain the insurance required above, you may, but do not have to, obtain insurance for me at my expense. I assign to you any money paid under the insurance to which you are entitled, no matter who obtains it. I appoint you to be my agent and attorney-in-fact to collect any money paid under the insurance, to endorse checks or drafts related to payment, and to settle or release any insurance claim.

"The insurance coverage must be written by a company that is reasonably satisfactory to you. Coverage must begin before the Vehicle is delivered to me, and it must continue until after I return the Vehicle to you. Both before the Vehicle is delivered to me and at any later time, I must give you whatever written proof that you request that I have obtained the insurance required under this Lease. I must cooperate with you and the insurer in the event of any loss or damage to the Vehicle. I must report any accident to you within 48 hours and provide you with the time, place and circumstances of the accident, as well as any information concerning injuries to any person or other property. If I am sued or threatened with suit, I must immediately send you the documents I receive (or the operator of the Vehicle receives) concerning that claim."

it was presented to that court. See Practice Book § 60-5.[13] Second, the argument depends on an interpretation of the interconnection among various provisions in the lease that is difficult to square with Moore's failure ever to allege that the indemnity clause was ambiguous. Finally, the argument presumes that a contract clause is oppressive if it allocates to a tortfeasor all of the uninsured costs attributable to the tortfeasor's misconduct. We know of no authority for this proposition.

## III

## CONCLUSION

In conclusion, on the record before it, the trial court improperly granted Moore's motion for summary judgment and denied Mitsubishi's motion for summary judgment. As a matter of law, an indemnity clause in an automobile lease does not violate public policy in general or § 14-154a in particular. As a matter of fact, the indemnity clause in this lease was enforceable because it was neither procedurally nor substantively unconscionable.

The judgments in favor of Moore are reversed and the case is remanded with direction to render judgments for the named defendant on its cross claims against Moore.

In this opinion the other justices concurred.

---

[13] Practice Book § 60-5 provides in relevant part: "The court may reverse or modify the decision of the trial court if it determines that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that the decision is otherwise erroneous in law.

"The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."