[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT (#116)
This memorandum of decision addresses the Motion for Summary Judgment (#116) submitted by the defendant, Gold Key Lease, Inc. (Gold Key), under date of December 10, 1999. The matter arises from a multi-vehicle collision which occurred on April 1, 1997, and which caused Dawn Camby to sustain personal injuries. The accidently allegedly resulted from the negligent operation of motor vehicles by two of the defendants, Amy CT Page 9312 Danzer and Thomas Gee. The complaint further asserts that at the time of the incident, Danzer was operating a vehicle she had leased from Gold Key. The plaintiff; American International Pacific Insurance Company (American), initiated the present action against Danzer, Gee and the remaining defendant, Gold Key, to recover sums it paid to and on behalf of its insured, Camby, following this accident.[1] Through its motion for summary judgment, Gold Key claims that as a matter of law, Danzer's failure to maintain automobile insurance on the leased vehicle, as required under the Gold Key lease agreement, renders her an unauthorized operator of the vehicle, and thereby deprives American of the protections offered by General Statutes § 14-154a.[2]
The facts at issue have been introduced through the pleadings. The four count complaint, dated March 30, 2000, specifically alleges that American paid to or on behalf of Camby a total sum of $14,000 in accordance with the terms of Camby's insurance policy, as the result of the injuries and losses she sustained in this accident. In counts one and two, American alleges Danzer's negligent and reckless operation of the Gold Key vehicle. Count four alleges negligent operation of the Gee vehicle. In count three against Gold Key, American alleges that at the time of the collision and for sometime thereafter Gold Key owned and leased to Danzer the vehicle in which she was driving and that, pursuant to § 14-154a, Gold Key is liable to American for all of Camby's injuries and losses caused by Danzer's negligence. In its answer dated July 23, 1999 (#107), Gold Key admits having leased the vehicle to Danzer, but denies liability. As one of its special defenses, Gold Key that it is not liable to American under § 14-154a because "Danzer was without authority to operate Gold Key's vehicle and/or did so outside the terms and the authority extended by the lease agreement."[3] Gold Key seeks summary judgment as to the third count of the complaint on the ground that Danzer was not an authorized operator of Gold Key's vehicle and that, therefore, Gold Key is not liable to American pursuant to § 14-154a. American argues, however, that Danzer was an authorized operator of the vehicle and that Gold Key therefore is liable for Camby's injuries and losses. The court concludes that the lessee's failure to comply with the insurance provisions of the Gold Key lease agreement does not render Danzer an unauthorized operator, within the meaning of § 14-154a, and accordingly finds this issue in favor of the plaintiff. The motion for summary judgment is denied.
 I LAW OF SUMMARY JUDGMENT — THE GENUINE ISSUE
The defendant's motion is properly before the court, as it calls into question the effect of language in the lease contract at issue. "The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried." CT Page 9313Wilson v. New Haven, 213 Conn. 277, 279, 567 A.2d 829 (1989). "The judgment sought shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Emphasis added.) Practice Book § 17-49. "A genuine issue has been variously described as a triable, substantial or real issue of fact . . . and has been defined as one which can be maintained by substantial evidence." (Citation omitted; internal quotation marks omitted.) United Oil Co. v. Urban Redevelopment Commission, 158 Conn. 364,378, 260 A.2d 596 (1969). "[T]he genuine issue aspect of summary judgment procedure requires the parties to bring forward before trial evidentiary facts, or substantial evidence outside the pleadings, from which the material facts alleged in the pleadings can warrantably be inferred." (Internal quotation marks omitted.) United Oil Co. v. Urban RedevelopmentCommission, supra, 158 Conn. 378-79. "A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) Hammer v.Lumberman's Mutual Casualty Co., 214 Conn. 573, 578, 573 A.2d 699
(1990).
The genuine issue squarely before the court is whether Danzer, who had contracted to be an authorized operator of the leased vehicle through her original entry into the lease agreement with Gold Key, subsequently became an unauthorized operator when she failed to maintain automobile insurance pursuant to an express term of the agreement.[4] Gold Key argues that Danzer's failure to maintain such insurance rendered her an unauthorized operator at the time of the accident. Relying on Pedevillanov. Bryon, 231 Conn. 265, 648 A.2d 873 (1994), Gold Key further argues that since Danzer was an unauthorized operator, it cannot be held liable under § 14-154a, for injuries and damages caused by her operation of the leased vehicle, and that summary judgment must therefor be awarded in this case. Also relying on Pedevillano v. Bryon, supra, and its progeny, American counters by maintaining that Danzer was an authorized operator of the leased vehicle at all times in question. American further argues that Gold Key is subject to § 14-154a liability for the lessee/operator's misconduct, even when such misconduct violates express contractual restrictions on the use of the vehicle, such as the requirement of maintaining liability insurance independent from that of the lessor.[5]
It is apparent that the Gold Key agreement required Danzer to keep the leased vehicle insured during the leasing period, at her own expense.[6]
The pertinent operative provisions, set forth on the first page of the contract, state: "REQUIRED PHYSICAL DAMAGE INSURANCE: You agree to keep the Vehicle insured during the Lease Term at your expense, as follows: automobile liability insurance with limits of not less than $ 100,000 for CT Page 9314 any one person for bodily injury or death, and $ 300,000 for any one accident for bodily injury or death, and $ 50,000 for property damage or $ 300,000 Combined Single Limit (Minimum). You agree that all insurance will protect Lessor and you will name Gold Key Lease, Inc. as additional (sic) named insured and loss payee. . . ." The agreement further instructed Danzer, the lessee, as follows: "REQUIRED VEHICLE DAMAGE INSURANCE: You agree to provide Lessor with a copy of the insurance policy that insures the Vehicle. If the vehicle insurance is canceled for any reason, you agree to immediately obtain new insurance on the Vehicle and provide a copy of the insurance policy to Lessor. You agree not to operate the Vehicle during the time that it is not insured." In addition, the agreement explicitly established that the lessee's failure to comply with any of the terms and conditions of the lease, including the failure to maintain insurance on the vehicle, is an event of "default" upon the contract, for which the "Lessor may terminate this Lease and Lessor may exercise any of its right or remedies, as provided in this Lease or at law." (Emphasis added.)
 II APPLICATION OF PEDEVILLANO v. BYRON
In the context of this case, it is important to recall that the liability provisions of § 14-154a effectively impose an acknowledged type of statutory suretyship upon owners of leased vehicles, as the acknowledged purpose of that statute "is to protect members of the public from injuries caused by the improper use of a leased automobile." Smithv. Mitsubishi Motors Credit of America, Inc., 247 Conn. 342, 346,721 A.2d 1187 (1998); see also Platcow v. Yasuda Fire Marine Ins. Co.of America, 59 Conn. App. 47, 51 n. 6, ___ A.2d ___ (2000).[7]
Section 14-154a has been consistently construed "as imposing on one who rents or leases a motor vehicle to another the same liability as that of its operator, provided the vehicle, at the time in question, is being operated by one inlawful possession of it pursuant to the terms of the contract ofrental.'" (Emphasis in the original.) Pedevillano v. Byron, supra,231 Conn. 268, quoting Gionfriddo v. Avis Rent A Car System, Inc.,192 Conn. 280, 284, 472 A.2d 306 (1984). Thus, the statute should not be interpreted so broadly as to impose "unlimited liability on the lessor for any injury caused by a motor vehicle that it owns", and § 14-154a
should not, for instance, make the lessor legally responsible for the tortious misconduct of a thief who stole a vehicle from the lessor's parking lot." Pedevillano v. Byron, supra, 231 Conn. 269. "Underlying the imposition of this type of liability is a legislative policy of a deliberate allocation of a risk, which holds an enterprise liable for such injuries as a cost of doing business. . . . Negligence is imputed to a third party because of "the social necessity to provide injured plaintiffs with financially responsible defendants.'" Hughes v. NationalCar Rental Systems, Inc., 22 Conn. App. 586, 588-89, 577 A.2d 1132, CT Page 9315 cert. denied, 216 Conn. 817, 580 A.2d 57 (1990). Generally, Pedevillano, like other cases following Hughes v. National CarRental Systems, Inc., maintains the principle that § 14-154a imposes liability upon a lessor where the tortfeasor "has been found to have been a person who had possession of the vehicle in accordance with the lease agreement." Id., 270. The pertinent issue before this court is, then, whether Danzer should be identified as having possession of the vehicle in accordance with the lease agreement, under the circumstances of the case at hand.
Neither the parties nor the court have been able to identify any appellate authority which specifically addresses the issue of whether a lessee's operation of a leased vehicle, in the absence of the personal automobile liability insurance which specified in the lease agreement, insulates the lessor from the statutory liability contemplated by §14-154a. While the defendant proffers Pedevillano v. Bryon as being dispositive of this issue, the court finds that decision to be factually distinct and thus largely unavailing in the pending case. Whereas thePedevillano court addressed the extent of lessor liability for the tortious conduct of an operator who was neither the named lessee nor expressly designated in the lease agreement as an authorized operator of the vehicle, the court's focus in the present case is on the conduct of the lessee, a designated driver who subsequently violated a contractual restriction on the use of the leased vehicle. The Pedevillano court recognized the importance of this distinction through its recognition that "[i]t bears emphasis . . . that the lessor's right to limit theidentity of authorized drivers does not, in light of the purpose of § 14-154a, relieve the lessor of liability to third parties for misconduct of such authorized drivers, even when such misconduct violates express contractual restrictions on the use of the vehicle. See Gionfriddo v. Avis Rent A Car System, Inc., supra, 284." (Emphasis in the origlnal.) Pedevillano v. Byron, supra, 231 Conn. 270-71.
Some guidance may be found, however, in the reasoning presented through several Superior Court decisions which have focused upon related issues, such as whether a lessee, as an authorized driver, subsequently may become an unauthorized operator for failure to comply with non-insurance terms of a lease agreement. For instance, in Young v. Kelly, the defendant-lessor argued that because the lessee drove the leased vehicle without a valid driver's license, in violation of the relevant lease agreement, the lessee had thereby been converted into an unauthorized operator of the vehicle. Due to the imposed a period of license suspension upon the lessee, the defendant lessor, General Electric Capital Auto Financial Services, Inc., argued that it could not be held liable through the application § 14-154a. Young v. Kelly, Superior Court, judicial district of New Haven at New Haven, Docket No. 429515 (March 17, 2000) (Alander, J.). After conducting a thorough and compelling analysis of the CT Page 9316Pedevillano case, that court denied the defendant lessor's motion for summary judgment. Consistent with the legislative purposes of §14-154a, Judge Alander cogently reasoned that since "[t]he legislature [had] determined that the owner of a leased vehicle shall be responsible for the tortious conduct of its lessee in the operation of the leased vehicle . . . [t]he lessor cannot contract away that obligation through restrictive lease provisions governing the conduct of the lessee." Youngv. Kelly, supra, Superior Court, Docket No. 429515. That court further reasoned that "[t]he statute's purpose would be undermined if lessors could immunize themselves from liability for the lessee's misconduct by simply placing provisions in the lease prohibiting various acts of misconduct" such as operation without a valid driver's license. Id. This court finds that reasoning to be persuasive and applicable to the pending case. Given Gold Key's statutory responsibility for the tortious conduct of its lessee, Danzer, in the operation of its vehicle, which it had leased for a fee, the lessor cannot reasonably be permitted to bargain away its legislative obligation through reliance upon lease provisions governing the lessee's contractual compliance.
Elrac, Inc. v. Villafane, which also arose from the allegedly negligent operation of a leased vehicle by the designated lessee, is similarly instructive. Elrac, Inc. v. Villafane, Superior Court, judicial district of New Haven at New Haven, Docket No. 385929 (August 23, 1996) (Hodgson, J.). The defendant lessor there argued that the lessee had become an unauthoritzed driver when he changed the leased vehicle's license plates and tinted its windows, all in violation restrictions imposed through the lease agreement. The lessor proposed that as a result of the lessee's failure to comply with these restrictions as established by the lease, § 14-154a should not apply, and it should not be held liable for the lessee's tortious conduct. In denying the lessor's motion for summary judgment, the court applied the analysis utilized in Pedevillano, noting the distinctions between operation by an unauthorized third party and by a party to the lease agreement who had, without authorization, violated the terms of an underlying contract for use of the negligently operated vehicle. Judge Hodgson acknowledged the applicability of § 14-154a to the facts of Elrac, Inv. v. Villafane, noting that "[w]hile a lessor would not be liable if its vehicle were operated by a person who initially acquired possession by theft . . . a lessor is liable if the vehicle is negligently operated by a person with whom the lessor made a choice to entrust with the vehicle by contract." (Citation omitted.) Id. Other well-reasoned trial court opinions have also held that the operation of the leased vehicle by a named lessee, while intoxicated, although a violation of the lease agreement, should not bar an innocent plaintiff's right to recover from the lessor, as such preclusion would thwart the public policy established through § 14-154a. See, e.g.,Weaver v. Thrifty Rent A Car, Superior Court, judicial district of New CT Page 9317 Haven at Meriden, Docket No. 244619 (May 13, 1996) (Gaffney, J.); Sawyersv. Rental Car Resources, Inc., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 550104 (June 6, 1995) (Sheldon, J.).
Evaluating the terms of the lease agreement presently at issue, it is clear that Gold Key contracted with Danzer in the expectation that she, as the lessee, would comply with certain conditions. Specifically, the automobile insurance procurement provision, set forth in the lease, applied solely to Danzer, who was expected to, and who did, operate the leased vehicle at issue. Gold Key's entry into the lease agreement for the use of an operable automobile, however, must also acknowledge its assumption of the risk that the vehicle would be driven upon public highways, encountering other traffic, even under circumstances in which Danzer had not full complied with each and every stricture of the lease agreement, including but not limited to the provision for maintenance of personal liability insurance. In light of the legislative intent of §14-154a and in accordance with the majority of judges of the Superior Court who have decided this issue, this court concludes that an automobile lessor may not escape § 14-154a liability by placing provisions in the lease prohibiting various acts of lessee misconduct. This decision is consistent with the stated public policy behind General Statutes § 14-154a. See Smith v. Mitsubishi Motors Credit ofAmerica, Inc., supra, 247 Conn. 346-48. As applied to the facts presented by the pending case, then court concludes that while Gold Key likely would not be held liable if a third person, such as Camby, had been injured as the result of the operation of its leased vehicle by a person who acquired possession by theft or other interference with the lease contract, the essential public policies which supporting § 14-154a
require that a lessor be liable to a third person if its vehicle is negligently operated by the very person, such as Danzer, to whom the lessor made a voluntary choice to entrust with the vehicle by contract. See Pedevillano v. Bryon, supra, 231 Conn. 270-71; see also Elrac, Inc.v. Villafane, supra, Docket No. 385929.
This court recognizes that against the weight of the above-noted Superior Court decisions, other trial judges have taken the contrary position. See, e.g, McEvoy v. Moriarty, Docket No. 261107, Superior Court, judicial district of New Haven at Meriden, (November 13, 1998) (Dunnell, J.) (articulation of summary judgment granted after hearing).[8] In McEvoy v. Moriarty, the court granted summary judgment to the lessor, Gold Key, on the ground that the lessor was not liable under § 14-154a
because the lessee, although an authorized operator of the leased vehicle at the inception of the entrustment, became an unauthorized operator when she operated the vehicle without a valid driver's license or automobile insurance in violation of the lease CT Page 9318 agreement. The court reasoned that the lessor "agreed to assume the risk only for authorized licensed and insured drivers — whether or not said driver was the actual lessee." McEvoy v. Moriarty, supra, Superior Court, Docket No. 261107 The court apparently treated the requirements of a valid driver's license and automobile insurance as valid bases for contractual avoidance of the statutory protections provided to third parties through § 14-154a. The assumption of the automobile lessor's risk, however, is not left to the terms of a commercial contract: it is governed by the express terms of § 14-154a. While it may be consistent with the legislative intent of of § 14-154a to find that certain "restrictive lease provisions governing the conduct of the lessee"; Young v. Kelly, supra, Superior Court, Docket No. 429515; may, in some circumstances, affect the relationship of the defendant, Gold Key, and its lessee, Danzer, those restrictions cannot reasonably restrict the vehicle owner's statutory responsibility for the tortious conduct of its lessee when such conduct has caused injuries to innocent third parties.
 III CONCLUSION
As a matter of law, Danzer was an authorized operator of the leased vehicle at the time of the accident within the application of §14-154a, legislation which was expressly created for the purpose of providing protection to third parties in circumstances such as those presented in this case, notwithstanding her violation of an express lease term requiring her to maintain automobile insurance. See Pedevillano v.Byron, supra, 231 Conn. 270-71. Accordingly, Gold Key may be held legally responsible and liable for Camby's injuries and losses under § 14-154a, and the proximate cause of Camby's damages remains an issue of fact outside the scope of a summary judgment.
WHEREFORE, based upon the foregoing facts and principles of law, the defendant Gold Key's motion for summary judgment (# 116) is hereby DENIED.
 BY THE COURT N. Rubinow, J.