******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

EMERITUS SENIOR LIVING *v.* DENISE LEPORE
(AC 40078)

Sheldon, Keller and Elgo, Js.

*Syllabus*

The plaintiff, which operates an assisted living facility, brought this action
seeking to collect an unpaid balance due for assisted living services it
had provided to the defendant's now deceased mother, R. The parties
had executed a residency agreement for R's residence and care, with
the defendant serving as a representative for R with power of attorney.
After the defendant stopped making payments to the plaintiff, the plain-
tiff served R and the defendant with a notice to quit possession for
nonpayment of rent. Thereafter, the plaintiff brought an eviction sum-
mary process action, and the trial court rendered a judgment of posses-
sion for the plaintiff. The plaintiff, however, did not execute on its right
to possession because R suffered from severe dementia and it lacked
the authority to place her in a different facility. The plaintiff attempted
to contact the defendant to discuss R's relocation, but the defendant
did not respond. Subsequently, the plaintiff initiated the present action
to recover all sums payable and due under the residency agreement.
The plaintiff filed a motion for summary judgment as to liability, and
after a hearing the trial court denied the plaintiff's motion and, sua
sponte, rendered judgment for the defendant, finding that the agreement
was unenforceable because it was unconscionable and against public
policy. On the plaintiff's appeal to this court, *held*:
1. The trial court improperly found that the residency agreement was unen-
forceable: the agreement was not unenforceable due to procedural or
substantive flaws, as the record did not reveal that the defendant had
no meaningful choice whether to select the plaintiff as the provider of
assisted living services for R, the agreement was sufficiently clear as
written to provide reasonable notice to the defendant, as R's representa-
tive, that she would be obliged to pay all sums due for services rendered
to R if R did not pay for them, and the agreement plainly and unambigu-
ously imposed personal liability on the defendant in a representative
capacity for amounts owed to the plaintiff; moreover, the agreement was
not substantively unconscionable, as the language of the representative
clause was akin to having a cosigner to the agreement, which is a
common business practice for residents in assisted living homes, it
is also common for residents in assisted living homes to entrust the
management of their finances to others, and the guarantee agreement
to ensure payment for services rendered was not so unreasonable as
to be unconscionable and, therefore, unenforceable.
2. The trial court erred by finding that the residency agreement was unen-
forceable as a matter of public policy; that court did not identify, and
the defendant did not provide, a specific public policy that the agreement
purportedly violated, and this court, which did not identify a public
policy prohibiting contracts that guarantee payment for assisted living
leases, could not conclude on the basis of the limited record that the
agreement was unenforceable on public policy grounds when there
exists a general policy in favor of freedom to contract.

Argued February 13—officially released June 26, 2018

*Procedural History*

Action to recover unpaid rent, and for other relief,
brought to the Superior Court in the judicial district of
New Haven, Housing Session, where the court, *Aval-
lone, J.*, denied the plaintiff's motion for summary judg-
ment; thereafter, following a hearing, the court
rendered judgment for the defendant; subsequently, the
court denied the plaintiff's motion to reargue, and the
plaintiff appealed to this court. *Reversed; further pro-*

*ceedings.*

*K. Scott Griggs*, with whom, on the brief, was *Gerardo Schiano*, for the appellant (plaintiff).

*Opinion*

KELLER, J. The plaintiff, Emeritus Senior Living a/k/a Brookdale Woodbridge,[1] appeals from the judgment of the trial court in favor of the defendant, Denise Lepore, in this action filed by the plaintiff to collect the unpaid balance due for assisted living services it had provided to the defendant's now deceased mother, Louise Rolla. The plaintiff claims that the court erred by finding that the residency agreement, to the extent it holds the defendant personally liable, as Rolla's representative, for unpaid amounts owed by Rolla to the plaintiff, is void and unenforceable because it is (1) unconscionable and (2) against public policy.[2] We agree and, accordingly, we reverse the judgment of the trial court.[3]

The following factual allegations and procedural history are relevant to this appeal. The plaintiff operates an assisted living facility in Woodbridge. On December 21, 2014, the defendant executed a residency agreement (agreement) with the plaintiff for the residence and care of her mother, Rolla.[4] The defendant signed the agreement on behalf of her mother as a representative and with power of attorney for her mother. The agreement provides in relevant part: "If this agreement is signed by a representative on your behalf, you and the representative shall be jointly and severally obligated to the community for payment of any fees or costs owing by you pursuant to this agreement. The community reserves the right to charge you, or your representative if not paid by you, for such fees and costs. If we take action to collect past due fees and costs, you and your representative will be liable for our costs of collection, including but not limited to the cost of demand letters, attorneys fees and court costs."

Initially, the defendant made regular payments to the plaintiff for her mother's care and residence. After March 11, 2016, however, the defendant stopped making payments to the plaintiff. In response, the plaintiff served Rolla and the defendant, in her capacity as Rolla's representative, with a notice to quit possession for nonpayment of rent on July 28, 2016. The plaintiff commenced an eviction summary process action against Rolla and the defendant on August 8, 2016, in the New Haven Superior Court, Housing Session. Rolla and the defendant did not appear in that action or file responsive pleadings therein. On August 31, 2016, the court rendered a judgment of possession for the plaintiff and on September 8, 2016, the court issued an execution to enforce that judgment. The plaintiff, however, did not execute on its right to possession because Rolla suffered from severe dementia and the plaintiff lacked the authority to place her in a different facility. As the defendant had power of attorney, she was the person with the authority to move her mother to a different facility. The plaintiff attempted to contact the defendant

to discuss Rolla's relocation, but the defendant did not respond.

On October 24, 2016, the plaintiff filed a complaint in the present action, seeking to recover "all sums payable and due" under the residency agreement, which the plaintiff claimed to amount to $47,310.02 at the time. The defendant, appearing without counsel, filed an answer on November 15, 2016, in which she referred to purported defects in the service of process. On December 9, 2016, the plaintiff filed a motion for summary judgment as to liability, arguing that there was no genuine issue of material fact as to whether the defendant must pay all unpaid sums owed for the residence and care services provided to her mother. The defendant did not file a memorandum in opposition to the plaintiff's motion for summary judgment or a countermotion for summary judgment in her favor.

The court, *Avallone, J.*, held a hearing on the plaintiff's motion for summary judgment on January 17, 2017. At the hearing, the court denied the plaintiff's motion for summary judgment and, sua sponte, rendered judgment for the defendant, finding that the agreement was unenforceable because it was unconscionable and against public policy. The court, ruling from the bench, stated in relevant part: "I find it unconscionable to accept [the plaintiff's] position that you have . . . a multipage complicated agreement which starts off naming who the parties are, and then in one paragraph entitled payment, your client establishes joint and several liability on [the defendant]. And I'm telling you I find that unconscionable. I find it against the public policy of the state of Connecticut that it isn't delineated specifically that the representative . . . is paying for this. This is the only paragraph in which . . . financial responsibility falls on the representative." The court reiterated: "This [agreement is] against public policy of the state of Connecticut. It is unconscionable that this language is intended to hold this person responsible." On January 27, 2017, the plaintiff filed a motion to reargue and to open or set aside the judgment, which the court denied on January 30, 2017. This appeal followed.

I

The plaintiff claims that the court erred in finding that the residency agreement is unenforceable due to unconscionability.

We first set forth our standard of review of a claim that a contract is unenforceable due to unconscionability. "The question of unconscionability is a matter of law to be decided by the court based on all the facts and circumstances of the case. . . . Thus, our review on appeal is unlimited by the clearly erroneous standard. . . . This means that the ultimate determination of whether a transaction is unconscionable is a question of law, not a question of fact, and that the trial court's

determination on that issue is subject to a plenary review on appeal. . . . The determination of unconscionability is to be made on a case-by-case basis, taking into account all of the relevant facts and circumstances." (Citations omitted; internal quotation marks omitted.) *Cheshire Mortgage Service, Inc.* v. *Montes*, 223 Conn. 80, 87–89, 612 A.2d 1130 (1992).

"The classic definition of an unconscionable contract is one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other. . . . In practice, we have come to divide this definition into two aspects of unconscionability, one procedural and the other substantive, the first intended to prevent unfair surprise and the other intended to prevent oppression." (Citation omitted; internal quotation marks omitted.) *Smith* v. *Mitsubishi Motors Credit of America, Inc.*, 247 Conn. 342, 349, 721 A.2d 1187 (1998). "A determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made—i.e., some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party . . . ." (Internal quotation marks omitted.) *Hottle* v. *BDO Seidman, LLP*, 268 Conn. 694, 719, 846 A.2d 862 (2004).

On the basis of the limited record in the present appeal, in which the defendant did not present any evidence in opposition to the plaintiff's motion for summary judgment, we are not persuaded that the agreement is unenforceable due to procedural or substantive flaws. With respect to the formation of the agreement, the record does not reveal that the defendant had no meaningful choice whether to select the plaintiff as the provider of assisted living services for her mother. The agreement is sufficiently clear, as written, to provide reasonable notice to the defendant, as her mother's representative, that she would be obliged to pay all sums due for services rendered to her mother if her mother did not pay for them. See *Sturman* v. *Socha*, 191 Conn. 1, 9, 12, 463 A.2d 527 (1983) (son who signed nursing care agreement as "Responsible Party" for his father was "unambiguously" personally liable for amounts owed to nursing home). The portion of the agreement at issue plainly and unambiguously imposes personal liability on persons signing in a representative capacity for amounts owed to the plaintiff.[5]

Additionally, for the reasons identified by the plaintiff, the agreement is not substantively unconscionable. The plaintiff argues that the agreement is not substantively unconscionable because "[t]he language of [the representative clause] is akin to having a [cosigner] to an agreement, which is a common business practice." The plaintiff also argues that the agreement is not substantively unconscionable because, as it is common

for residents in assisted living homes to entrust the management of their finances to others, personal liability is typically imposed on the individual entrusted to incentivize that person to pay the facility for its services. Thus, a guarantee agreement to ensure payment for services rendered is not so unreasonable as to be unconscionable and lead us to conclude that it is unenforceable.

## II

The plaintiff also claims that the court erred by finding that the residency agreement is unenforceable as a matter of public policy. We agree with the plaintiff.

We begin our analysis of this claim by setting forth the standard of review governing a claim that a contract is unenforceable as a matter of public policy. "Although it is well established that parties are free to contract for whatever terms on which they may agree . . . it is equally well established that contracts that violate public policy are unenforceable. . . . [T]he question [of] whether a contract is against public policy is [a] question of law dependent on the circumstances of the particular case, over which an appellate court has unlimited review. . . .

"There is a strong public policy in Connecticut favoring freedom of contract . . . . This freedom includes the right to contract for the assumption of known or unknown hazards and risks that may arise as a consequence of the execution of the contract. Accordingly, in private disputes, a court must enforce the contract as drafted by the parties and may not relieve a contracting party from anticipated or actual difficulties undertaken pursuant to the contract, unless the contract is voidable on grounds such as mistake, fraud or unconscionability. . . . If a contract violates public policy, this would be a ground to not enforce the contract. . . . A contract . . . however, does not violate public policy just because the contract was made unwisely. . . . [C]ourts do not unmake bargains unwisely made. Absent other infirmities, bargains moved on calculated considerations, and whether provident or improvident, are entitled nevertheless to sanctions of the law. . . . Although parties might prefer to have the court decide the plain effect of their contract contrary to the agreement, it is not within its power to make a new and different agreement; contracts voluntarily and fairly made should be held valid and enforced in the courts." (Citations omitted; internal quotation marks omitted.) *Geysen* v. *Securitas Security Services USA, Inc.*, 322 Conn. 385, 392–93, 142 A.3d 227 (2016).

The court did not identify and the defendant did not provide a specific public policy that the agreement purportedly violates.[6] As we do not identify a public policy prohibiting contracts that guarantee payment for assisted living leases, and we are mindful of the general

policy in favor of freedom to contract, we do not conclude, on the basis of the limited record before us, that the agreement is unenforceable on public policy grounds.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.

[1] Brookdale Senior Living Solutions purchased the Emeritus Corporation in August, 2014. The plaintiff continued to operate under the name Emeritus Senior Living until June, 2015. At that point the plaintiff changed its name to Brookdale Woodbridge.

[2] The plaintiff has relied on the court's oral ruling of January 17, 2017. The record does not contain a signed transcript of the court's decision, as is required by Practice Book § 64-1 (a), and the plaintiff did not file a motion pursuant to Practice Book § 64-1 (b) providing notice that the court had not filed a signed transcript of its oral decision. Nor did the plaintiff take any additional steps to obtain a decision in compliance with Practice Book § 64-1 (a). In some cases in which the requirements of Practice Book § 64-1 (a) have not been followed, this court has declined to review the claims raised on appeal due to the lack of an adequate record. Despite the absence of a signed transcript of the court's oral decision or a written memorandum of decision, however, our ability to review the claims raised on the present appeal is not hampered because we are able to readily identify a sufficiently detailed and concise statement of the court's findings in the transcript of the proceeding. See *State* v. *Brunette*, 92 Conn. App. 440, 446, 886 A.2d 427 (2005), cert. denied, 277 Conn. 902, 891 A.2d 2 (2006).

[3] The court rendered judgment on grounds that neither party raised below. Although the plaintiff does not claim in this appeal that the court lacked the authority to render judgment on grounds never raised, we note that "[t]he court's function is generally limited to adjudicating the issues *raised by the parties* on the proof they have presented and applying appropriate procedural sanctions on motion of a party. . . . F. James, G. Hazard & J. Leubsdorf, Civil Procedure (5th Ed. 2001) § 1.2, p. 4. The parties, may, under our rules of practice, challenge the legal sufficiency of a claim at two points prior to the commencement of trial. First, a party may challenge the legal sufficiency of an adverse party's claim by filing a motion to strike. Practice Book § 10-39. Second, a party may move for summary judgment and request the trial court to render judgment in its favor if there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law. Practice Book §§ 17-44 and 17-49. In both instances, the rules of practice require a party to file a written motion to trigger the trial court's determination of a dispositive question of law. The rules of practice do not provide the trial court with authority to determine dispositive questions of law in the absence of such a motion." (Emphasis in original; internal quotation marks omitted.) *Vertex, Inc.* v. *Waterbury*, 278 Conn. 557, 564–65, 898 A.2d 178 (2006); see also *Greene* v. *Keating*, 156 Conn. App. 854, 860–61, 115 A.3d 512 (2015) (court erred in rendering summary judgment on ground not claimed or briefed by parties' cross motions for summary judgment).

"A court may not grant summary judgment sua sponte. . . . The issue first must be raised by the motion of a party and supported by affidavits, documents or other forms of proof." (Internal quotation marks omitted.) *Nationstar Mortgage, LLC* v. *Mollo*, 180 Conn. App. 782, 798,    A.3d (2018). "When a rule of practice requires a written motion, a memorandum of law and supporting documentation, it is because the issue to be decided is of considerable importance. In the case of summary judgment, which results in a swift, concise end to often complex litigation without benefit of a full trial, the parties and the court need to be as well informed as possible on the applicable law and facts." Id., 797.

In the present case, the court, sua sponte, rendered judgment for the defendant on grounds not raised by the parties. Accordingly, we observe that the court acted in excess of its authority when it rendered judgment for the defendant.

[4] Rolla passed away on January 24, 2017.

[5] At the January 17, 2017 hearing, the defendant argued to the court that she was unaware that, by signing the agreement as a representative, she would be personally liable for the amount owed to the plaintiff. The defendant's purported ignorance, however, does not lead us to conclude that the formation of the agreement was procedurally unconscionable. The defen-

dant had an obligation to read the agreement; *Smith* v. *Mitsubishi Motors Credit of America, Inc.*, supra, 247 Conn. 351–52; and understand it before signing. See *Friezo* v. *Friezo*, 281 Conn. 166, 199, 914 A.2d 533 (2007). The defendant has not presented any evidence that demonstrated that the plaintiff prevented her from doing so.

[6] Pursuant to 42 C.F.R. § 483.15 and General Statutes § 19a-550 (b), nursing home facilities are prohibited from requiring patients, as a condition of admission, to have a third-party guarantor. These laws, however, do not prohibit a third party from voluntarily entering into a contractual obligation with a nursing home to guarantee payment for debts incurred by a patient. See *Meadowbrook Center, Inc.* v. *Buchman*, 149 Conn. App. 177, 199–201, 90 A.3d 219 (2014). In the present case, the limited record does not reveal that the plaintiff required the defendant to sign the agreement as a third-party guarantor as a condition of her mother's admittance to the plaintiff's facility, nor did the defendant argue to the court that a voluntary agreement to serve as her mother's guarantor is unenforceable on public policy grounds. On the basis of this limited record, we decline to conclude that such an agreement violates public policy.

————————————————